UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA PARKER PENNINGTON, et al., <br> Plaintiffs, <br> v. <br> TETRA TECH EC, INC., et al., <br> Defendants. | Case No. 18-cv-05330-JD <br><br> **ORDER RE REMAND** <br> Re: Dkt. No. 13 |

In World War II, the Hunters Point Naval Shipyard ("HPNS") in San Francisco was home to one of the largest United States Navy ("USN") facilities on the West Coast. Among other contributions, it played a key role in building, repairing and maintaining the USN's ships of the line during the war in the Pacific.

HPNS was also significantly involved in the development of the United States as a nuclear power. From approximately 1948 to 1969, HPNS was the site of the Naval Radiological Defense Laboratory ("NRDL"). The USN established the NRDL to conduct research related to nuclear weapons, and to decontaminate ships exposed to radiation at weapons testing sites. As noted by the United States Nuclear Regulatory Commission, the NRDL used "a broad spectrum of radioactive materials" at HPNS over the course of its operations. *See* https://www.nrc.gov/info-finder/decommissioning/complex/hunters-point-naval-shipyard.html.

These and other activities left HPNS with a legacy of environmental problems. The United States Environmental Protection Agency determined that HPNS suffers from contamination in the soil, dust, sediments, surface water and groundwater. Contaminants include "petroleum fuels, pesticides, heavy metals, polychlorinated biphenyls (PCBs), volatile organic compounds (VOCs) and radionuclides." *See* https://cumulis.epa.gov/supercpad/SiteProfiles/ index.cfm?fuseaction=second.Cleanup&id=0902722#bkground. As a result, the EPA placed

1 HPNS on the National Priorities List under the Comprehensive Environmental Response,

2 Compensation, and Liability Act (CERCLA), meaning that HPNS was designated a "Superfund"

3 clean-up site.

4 The United States Navy is the lead agency responsible for the environmental remediation

5 of HPNS. It hired defendants Tetra Tech, Inc. and Tetra Tech EC, Inc., to do the clean-up work,

6 and has paid them approximately three hundred million dollars in federal funds for work they did

7 not do, as plaintiffs allege. A substantial amount of litigation has ensued, much of which is

8 pending before this Court. These cases include whistleblower actions under the False Claims Act,

9 31 U.S.C. §§ 3729 *et seq*., alleging that the Tetra Tech defendants defrauded the federal

10 government by falsifying clean-up records and submitting fraudulent invoices. The United States

11 has intervened as a plaintiff in several of the whistleblower claims. Two former employees of

12 defendants were criminally prosecuted for conduct related to the clean up, and sentenced to prison

13 terms. And a substantial number of individuals have filed cases like this one alleging claims for

14 fraud, negligence, nuisance and other counts against defendants for property and other injuries.

15 Plaintiffs in this action are homeowners in a section of HPNS known as "Parcel A," which

16 was handed over to the City of San Francisco in 2004 for residential development. Plaintiffs have

17 sued defendants for losses attributed to the remediation. Dkt. 1-1, Ex. A ("Compl."). Plaintiffs

18 originally filed the case in San Francisco Superior Court, alleging only California state law claims,

19 but defendant Tetra Tech EC, Inc. ("Tetra Tech") removed it to this Court. Dkt. No. 1. The

20 grounds for removal were the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), and the

21 asserted existence of federal jurisdiction based on HPNS's status as a "federal enclave." *Id*. ¶ 8.

22 For the latter removal basis, Tetra Tech represents that it "obtained consent from the other served

23 defendants to remove the action pursuant to 28 U.S.C. section 1441(a) on the ground that the

24 alleged conduct giving rise to this action occurred on a federal enclave." *Id*. ¶ 25.

25 Plaintiffs ask to remand the case to state court. Dkt. No. 13. Because this case involves

26 tort claims arising on a military shipyard, which qualifies as a federal enclave, the Court has

27 jurisdiction and the motion is denied. This basis for federal jurisdiction applies to all the remand

28 motions in the related cases. Consequently, as the Court discussed with the parties at the case

management conference, this order resolves the remand issue not just in the *Pennington* case, No. 18-5330, but also in all of the related cases. *See* Dkt. No. 32.

**DISCUSSION**

When an action is removed under 28 U.S.C. § 1441 for the usual reasons of diversity of citizenship or a federal question, we apply a strong presumption against removal, and the removal statute is strictly construed against finding federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252-53 (9th Cir. 2006) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)); *California v. AbbVie Inc.*, 390 F. Supp. 3d 1176 (N.D. Cal. 2019). But this is not a typical removal situation. Tetra Tech brought the case to federal court on the far less common grounds of federal officer or federal enclave jurisdiction.

The federal officer contention is premised on Section 1442, which provides in pertinent part that a person "acting under" a federal officer may remove to federal court a civil or criminal action commenced against that person in state court. 28 U.S.C. § 1442(a)(1). Congress adopted this provision before the Civil War to ensure that attempts by southern states to challenge federal authority would be heard in federal court. *See Durham*, 445 F.3d at 1252. In light of this legacy, the Supreme Court has determined that removal under Section 1442 is "absolute for conduct performed under color of federal office," *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981), and that Section 1442, unlike Section 1441, should be "liberally construed" in favor of removal. *Colorado v. Symes*, 286 U.S. 510, 517 (1932). Our circuit has concluded that this command applies to federal officers as well as their agents when they seek a federal forum for claims against them. *Durham*, 445 F.3d at 1252.

As a private entity and putative federal "agent," Tetra Tech may remove under Section 1442(a)(1) if it demonstrates "that (1) it is a 'person' within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions [Tetra Tech] took pursuant to a federal officer's direction, and (3) it has a 'colorable' federal defense to plaintiffs' claims." *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (citing *Durham*, 445 F.3d at 1251). These questions raise a host of complicated legal and factual issues, and the parties devote considerable effort to debating them. Dkt. Nos. 13, 36, 44.

3

It turns out that Tetra Tech's other argument for federal jurisdiction is much more straightforward. "Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham*, 445 F.3d at 1250 (citations omitted). This grant derives from Article I of the Constitution, which provides that the United States has jurisdiction "in all Cases whatsoever . . . over all Places purchased by the Consent of the Legislature of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17; *see also Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369, 371 (1964). Tetra Tech removed precisely on this basis. Its notice of removal states that "HPNS is a federal enclave," and "[t]he area of San Francisco known as HPNS was acquired by the United States for use by the Navy as a shipyard beginning in 1939." Dkt. No. 1 ¶ 19. And although "the area of HPNS known as 'Parcel A' was transferred to the City of San Francisco in connection with the redevelopment of the area, nearly all of the remaining land in HPNS is still owned by the United States." *Id*.

While there is obvious intuitive appeal in simply finding that a former United States Navy shipyard could not be anything but a federal enclave, plaintiffs' remand motion argued that the removal notice did not provide any "evidence of how the government acquired HPNS or how it was being used." Dkt. No. 13 at 10. More specifically, plaintiffs objected that Tetra Tech had not established the state's consent to the purchase of land by the federal government or the federal government's acceptance of exclusive jurisdiction; plaintiffs further argued that their claims arose in Parcel A, which is not currently owned by the federal government. *Id*. at 10-12. In response, Tetra Tech has submitted detailed evidence consisting of, among other things, Congressional purchase authorizations, state legislative acts providing the United States with the California Legislature's consent, property deeds, letters acknowledging the United States' acceptance of jurisdiction, and other materials going back to the 1940s which answer plaintiffs' objections. *See* Dkt. No. 36 at 12-14; Dkt. No. 38.[1]

---

[1] Tetra Tech's unopposed request for judicial notice is granted. Dkt. No. 38.

4

Plaintiffs have not meaningfully contested this record, or the salient facts of the Navy's ownership and military use of HPNS with the State of California's consent. In reply to Tetra Tech's showing, they limited themselves to saying that "doubts remain about removability under the federal enclave doctrine" because some of the "pertinent facts" in this case may not have occurred on the federal enclave. Dkt. No. 44 at 9-10. Plaintiffs do not offer a clear statement of what those facts might be, but suggest they include things like "the location from which defendant managed data, created reports, kept records, and made misrepresentations and disclosures about their work at HPNS." *Id*. Even then, plaintiffs concede that "[i]f those business practices occurred on the federal enclave, then removal might be appropriate." *Id*.

Whatever those details might reveal, it would not displace the definitive evidence of federal ownership and use of HPNS that Tetra Tech has adduced. That evidence is the foundation on which federal enclave jurisdiction stands, and plaintiffs' "doubts" do not undermine it in any meaningful way. There is also no question that plaintiffs' own allegations in the complaint establish that the locus of their claims is HPNS. In federal enclave cases, the key factor is "the locus," that is the physical place, "in which the claim arose." *Alvares v. Erickson*, 514 F.2d 156, 160 (9th Cir. 1975). The complaint here alleges, among other things, that "instead of remediating HPNS, Tetra Tech engaged in fraud," and "contaminated soil left HPNS fraudulently and/or negligently labeled as clean"; "[t]he toxic waste at HPNS can lead, and has led, to serious health complications, including deadly cancer"; "Tetra Tech has been orchestrating a cleanup for well over a decade, and up to 97% of Tetra Tech's cleanup needs to be retested and/or redone"; and finally, "[a]s a result, the value of plaintiffs' homes has been damaged, as the demand for homes sited not just next to, but potentially on top of, a toxic waste dump complete with radiation from nuclear isotopes . . . is infinitesimally low or nonexistent." Compl. ¶¶ 10, 17, 18. These allegations leave no doubt that plaintiffs' claims are premised on environmental toxins discharged at HPNS while it was an active Navy shipyard and research facility, and a federal enclave.

## CONCLUSION

Removal was consequently appropriate on federal enclave grounds, and plaintiffs' motion to remand is denied. Dkt. No. 13. This conclusion applies to all remand motions filed in any of

5

the related cases.  The Court does not reach any choice-of-law issues that might arise from HPNS's status as a federal enclave.  *See*, *e.g.*, *Pacific Coast Dairy, Inc. v. Dep't of Agric. of Cal.,* 318 U.S. 285, 294 (1943); *James Stewart & Co. v. Sadrakula,* 309 U.S. 94, 99-100 (1940).  Those questions are reserved for another day, should they present themselves.

The stay that was previously imposed is lifted, and a further case management conference is set for November 21, 2019.  A joint case management statement should be filed by November 14, 2019, addressing in a consolidated fashion all of the related cases.  Any remaining remand issues should also be flagged in that statement.

**IT IS SO ORDERED.**

Dated:  October 18, 2019

_____
JAMES DONATO
United States District Judge