JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
DONALD J. MAGILLIGAN (SBN 257714)
dmagilligan@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 692-3606

*Attorneys for Pennington et al.*
[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **LINDA PARKER PENNINGTON**, *et al.*, individually, and on behalf of all others similarly situated,<br>　　　　　　　　**Plaintiffs**,<br>　　v.<br>**TETRA TECH, INC.; TETRA TECH EC, INC.; LENNAR CORPORATION; HPS1 BLOCK 50 LLC; HPS1 BLOCK 51 LLC; HPS1 BLOCK 53 LLC; HPS1 BLOCK 54 LLC; HPS1 BLOCK 56/57 LLC; HPS DEVELOPMENT CO.; FIVE POINT HOLDINGS, LLC; BILL DOUGHERTY; ANDREW BOLT; EMILE HADDAD; and DOES 1-100**,<br>　　　　　　　　**Defendants.** | Case No. 3:18-cv-05330-JD<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF *PENNINGTON* PLAINTIFFS' CLASS SETTLEMENT WITH HOMEBUILDER DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date:** October 14, 2021<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 11, 19th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT**, on October 14, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the *Pennington* Plaintiffs will and hereby do move for entry of an order seeking final approval of a proposed settlement with Defendants Lennar Corporation, HPS1 Block 50 LLC, HPS1 Block 51 LLC, HPS1 Block 53 LLC, HPS1 Block 54 LLC, HPS1 Block 56/57 LLC, FivePoint Holdings, LLC, HPS Development Co., L.P., and Emile Haddad. This motion is brought pursuant to Federal Rule of Civil Procedure ("Rule") 23 and the Northern District of California's Procedural Guidance for Class Action Settlements. Plaintiffs seek approval of this settlement because it is fair, reasonable, and adequate.

The *Pennington* Plaintiffs also seek final certification of a class for settlement purposes. The settlement class meets the prerequisites of Rule 23(a), common questions of liability predominate over individual damages questions, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The *Pennington* Plaintiffs seek approval of their Allocation Plan. The Plan treats Class Members equitably relative to each other, and the plan is fair, reasonable, and adequate in light of each individual Class Member's injuries and the strength of their claims on the merits.

This motion is based upon this Notice, the Memorandum of Points and Authorities in Support thereof; the declarations of Anne Marie Murphy, Linda Parker Pennington, Brett Reynolds, the Honorable Daniel Weinstein, Cameron Azari, Esq., and the exhibits attached thereto; the Court's March 17, 2021 Order Granting Preliminary Approval of *Pennington* Plaintiffs' Class Settlement with Homebuilder Defendants (Dkt. 154), the *Pennington* Plaintiff Class Counsel's Motion for Attorneys' Fees and Costs (Dkt. 175), and any further papers filed in support of this motion, as well as arguments of counsel and all records on file in this matter.

/././

/././

Dated: August 5, 2021

**COTCHETT, PITRE & McCARTHY, LLP**

By: */s/ Anne Marie Murphy*
    ANNE MARIE MURPHY
    DONALD J. MAGILLIGAN

**BOWLES & VERNA LLP**

By: */s/ Bradley R. Bowles*
    BRADLEY R. BOWLES (SBN 202722)
    JONATHAN W. LEE (SBN 285323)

**GIBBS LAW GROUP LLP**

By: */s/ Andre M. Mura*
    ERIC H. GIBBS (SBN 178658))
    ANDRE M. MURA (SBN 298541)
    AMANDA M. KARL (SBN 301088)

**MOTION FOR FINAL APPROVAL OF *PENNINGTON* PLAINTIFFS' CLASS SETTLEMENT WITH HOMEBUILDER DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 3:18-cv-05330-JD**

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e) and this Court's Order granting preliminary approval of the *Pennington* Plaintiffs' proposed settlement with Defendants Lennar Corporation, HPS1 Block 50 LLC, HPS1 Block 51 LLC, HPS1 Block 53 LLC, HPS1 Block 54 LLC, HPS1 Block 56/57 LLC, FivePoint Holdings, LLC, HPS Development Co., L.P., and Emile Haddad (hereafter, "the Homebuilders"), the *Pennington* Plaintiffs submit this memorandum in support of their request for final approval of the class settlement with the Homebuilder Defendants (the "Settlement.")

The Settlement with the Homebuilders is fair, reasonable, and adequate. Fed. R. Civ. Proc. 23(e). The Settlement was negotiated with the assistance of Hon. Daniel W. Weinstein and Lizbeth Hasse, Esq., at JAMS in San Francisco. The Settlement fund of $6,300,000 will provide substantial and immediate relief to Class Members, whose home values are depreciating and who are paying exorbitant property taxes for promised amenities that have not materialized. See Declaration of Anne Marie Murphy in Support of Motion for Final Approval (hereafter, "Murphy Decl.") ¶ 15. Despite the strength of their claims, Class Members face significant litigation risks in light of the arbitration clauses in their purchase documents.

The Allocation Plan is equitable and efficient. The Settlement Fund Balance will be allocated to Class Members based on objective facts including the purchase date, purchase price, whether they paid market rate, and if they sold the home, the sales price. See Declaration of Brett Reynolds in Support of Motion for Final Approval (hereafter, "Reynolds Decl.") ¶ 29. Each Class Member will automatically receive a check with their settlement share without having to file a claim.

The reaction to the Settlement has been overwhelmingly positive. The court-approved Notice Plan reached 100% of Class Members. *See* Declaration of Cameron R. Azari in Support of Motion for Final Approval (*hereafter*, "Azari Decl.") ¶ 23. To date, there have been no objections to the terms of the Settlement nor any requests to opt out. In light of the lack of objections, the equity of the Allocation Plan, and the success of the Notice Plan, the *Pennington* Plaintiffs respectfully ask this Court to approve the Settlement, to grant final certification of the settlement class, and to approve the Allocation Plan.

II. **FACTUAL AND PROCEDURAL HISTORY**

The *Pennington* Plaintiffs ("Plaintiffs" or "Homeowners") purchased homes at the Shipyards, a brand new 500-plus-acre community being developed by Defendants Lennar Corporation and FivePoint Holdings, LLC. Plaintiffs' homes are located on Parcel A, a section of the Shipyards where Lennar and its affiliates had built and sold 347 homes as of August, 2020 when Plaintiffs and the Homebuilders (collectively, "the Parties") reached the Settlement. Plaintiffs allege that the Homebuilders made uniform misrepresentations about the safety of the area, giving rise to the underlying lawsuits filed by three firms: Cotchett, Pitre & McCarthy, Bowles & Verna, and the Gibbs Law Group (collectively, "Class Counsel"). For a more complete discussion of the factual background, please see Motion for Preliminary Approval of *Pennington* Plaintiffs' Class Settlement with Homebuilder Defendants (hereafter, "Motion for Preliminary Approval"). Dkt. 123.

A. **The Settlement**

The Parties finalized the terms of the Settlement in August 2020. Murphy Decl. ¶ 14. The Homebuilders agreed to pay six million, three hundred thousand dollars ($6,300,00.00) to settle the claims against them in this action (the "Settlement Fund"). The Settlement Fund will be distributed *pro rata* among the Class Members. The costs of settlement administration will not be paid from the Settlement Fund. The Homebuilders have agreed to pay up to $50,000.00 for settlement administration, and the claims administrator has agreed to cap their fees at $50,000.00. Murphy Decl. ¶ 22.

On August 7, 2020, the Parties filed an administrative motion to stay all proceedings in this action against the Homebuilders except proceedings related to the Court's approval of this Settlement. Dkt. 120.

Plaintiffs filed their Motion for Preliminary Approval on August 14, 2020. Dkt. 123. On March 17, 2021, this Court granted preliminary approval of the Settlement, appointed Linda Parker Pennington as Representative Plaintiff, appointed Cotchett, Pitre & McCarthy as Lead Class Counsel, and conditionally certified the following class for settlement purposes:

> All individuals or entities who purchased or obtained title to one or more units at Parcel A between 2014 and the date on which this Settlement Agreement is executed by all Parties.

1  Excluded from this class are Defendants, their affiliates and subsidiaries, and their
2  officers, directors, partners, employees, and agents; class counsel, employees of class
   counsel's firms, and class counsel's immediate family members; defense counsel, their
3  employees, and their immediate family members; and any judicial officer who considers
   or renders a decision or ruling in this case, their staff, and their immediate family
4  members.

Dkt. 154.

On approximately April 23, 2021, the court-appointed claims administrator, Epiq Class Action & Class Solutions, Inc. ("Epiq"), began implementing the Notice Plan. Azari Decl. ¶ 11.

On June 10, 2021, Class Counsel filed *Pennington* Plaintiffs' Class Counsel's Motion for Attorneys' Fees and Costs. Dkt. 175. At the Fairness Hearing, this Court will decide that motion as well as this motion for final approval of the Settlement.

## III.   ARGUMENT

A class action may not be dismissed, compromised, or settled without approval of the Court. Fed. R. Civ. P. 23(e). The settlement approval procedure includes three steps: (1) certification of a settlement class and preliminary approval of the proposed settlement; (2) dissemination of notice to affected class members; and (3) a formal fairness hearing, also known as a final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may present argument concerning the fairness, adequacy, and reasonableness of the settlements. *Vasquez v. Coast Valley Roofing*, 670 F. Supp. 2d 1114, 1124–25 (E.D. Cal. 2009); *see also* Manual for Complex Litigation, Fourth (Fed. Judicial Center 2004) § 23.63. This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* William B. Rubenstein, Albert Conte & Herbert Newberg, 4 Newberg on Class Actions §§ 13:39–40 (5th ed. 2014).

The Court completed the first step when it certified the settlement class and preliminarily approved the settlement on March 17, 2021. The Claims Administrator completed the second step when it implemented the Notice Plan beginning on April 23, 2021. Now, *Pennington* Plaintiffs seek final approval of the Settlement because it is fair, reasonable, and adequate.

/././

/././

### B. This Court Should Grant FINAL Approval of the Settlement Because it is Fair, Reasonable, and Adequate

The Court may approve settlements shown to be fair, reasonable, and adequate. Fed. R. Civ. Proc. Rule 23(e)(2). The Settlement deserves approval because the Class was adequately represented, the Settlement was negotiated at arm's length, the relief is adequate, and the proposal treats Class Members equitably relative to each other.

#### 1. The Representative Plaintiff Has Adequately Represented the Class

The Court appointed on a preliminary basis Plaintiff Linda Parker Pennington as Representative Plaintiff of the Settlement Class. Dkt. 154, ¶ 6. The Court should confirm the appointment of Mrs. Pennington because she has adequately represented the Class. Mrs. Pennington is a member of the class she seeks to represent, she has an intimate knowledge of this case, she understands her duties as a class representative, and she has no conflicts of interest with other Class Members. Rule 23(e)(2)(A).

Mrs. Pennington knows this case. *See* Declaration of Linda Parker Pennington in Support of Motion for Final Approval (hereafter, "Pennington Decl."). A long-time San Francisco resident, Mrs. Pennington began considering a move to the Shipyards in 2013. She met with Lennar sales agents, she reviewed their marketing materials, and she thoughtfully weighed the advantages and risks of being an early resident at the Shipyards. When the Tetra Tech scandal broke, Mrs. Pennington promptly retained counsel and filed suit. She has closely followed subsequent events by attending homeowners' association and community meetings, by corresponding with government representatives and politicians involved with the Shipyards, by corresponding with experts who study the Shipyards, by speaking to her friends in the Shipyards and surrounding communities, and by staying abreast of media coverage of the Shipyards and the plan for further testing and remediation. Pennington Decl. ¶ 10. Ever since news of the Shipyards scandal broke, Mrs. Pennington has been a champion of the class, and she continues to advocate for them today.

Mrs. Pennington's interests align with the interest with other Class members. Every Class Member has suffered appreciation impairment damages, damages related to the payment of *Mello-Roos* taxes, or both. Mrs. Pennington has suffered both. By maximizing her damages and claims, she

is thereby advancing the interests of every Class Member. Mrs. Pennington's interests are sufficiently similar to those of the class, and there is no antagonism between herself and the class. *See* Newberg on Class Actions (5th Ed.) § 3:58.

Mrs. Pennington also understands her responsibilities as a class representative. Mrs. Pennington is putting the interests of the class ahead of her own personal interests, and her settlement share will not be increased because of her status as class representative. She is willing to sit for a deposition and to answer written discovery questions as necessary because she believes that successful resolution of this case will benefit the entire community. Pennington Decl. ¶ 9. Class Counsel are not requesting an incentive award on behalf of Mrs. Pennington in connection with the Homebuilders' Settlement.

### 2. Class Counsel has Adequately Represented the Class

As described in the *Pennington* Plaintiff Class Counsel's Motion for Attorneys' Fees and Costs (Dkt. 175), Class Counsel has adequately represented the interests of the Class.

### 3. The Parties Negotiated the Settlement at Arm's Length

The Settlement is the product of an arm's length negotiation mediated by the Honorable Daniel Weinstein (Ret.) and Lizbeth Hasse, Esq. at JAMS in San Francisco. Rule 23(e)(2)(B); Declaration of Hon. Daniel Weinstein (Ret.) (hereafter, "Weinstein Decl.") ¶ 9. The Settlement process began with an in-person mediation in August of 2019 and ended on August 10, 2020 when the parties finalized the Settlement agreement that gave rise to this request for final approval. In between, the Parties spent hundreds of hours negotiating the Settlement and creating the Allocation Plan. The Settlement positions were primarily communicated through JAMS rather than directly between the Parties' counsel. Murphy Decl. ¶ 14.

The Parties reached the Settlement in response to a mediator's proposal. The Parties never negotiated over attorney fees. The Settlement agreement says that attorneys' fees will be paid from the Settlement fund at the court's discretion. Murphy Decl. ¶ 18.

### 4. The Relief Provided to the Class is Adequate

The Settlement Fund is six million, three hundred thousand dollars ($6,300,000). Murphy Decl. ¶ 15. If the court awards attorneys' fees and costs as requested by Class Counsel, then the

MOTION FOR FINAL APPROVAL OF *PENNINGTON* PLAINTIFFS' CLASS SETTLEMENT WITH HOMEBUILDER DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 3:18-cv-05330-JD

5

Settlement Fund Balance will be four million, four hundred and eighty-two thousand, four hundred and four dollars ($4,482,404) calculated as follows:

| | |
|---|---:|
| **Settlement Fund** | $ 6,300,000 |
| **Costs** | (323,461) |
| **Attorney Fees** | (1,494,135) |
| *Settlement Fund Balance:* | $ 4,482,404 |

The Settlement Fund is approximately 12.2 percent of the class' total economic damages. Reynolds Decl. ¶ 27. The Settlement Fund Balance is adequate in light of the costs of further litigation and the risk of arbitration, the effectiveness of the proposed method of distribution, the terms of any proposed attorneys' fees, and the agreements made in connection with the proposal. Rule 23(e)(2)(C).

    a.  **The Relief is Adequate in Light of the Cost, Risk and Delay of Further Litigation**

The Settlement Fund Balance will pay Class Members approximately $12,000 per unit on average.[1] In the interest of full transparency, Plaintiffs provided a chart listing individual recoveries that are based on objective criteria prepared by an expert in real estate valuation. Reynolds Decl. ¶ 36, Exh. B. If this Court approves the Settlement, Class Members will receive a significant portion of their total economic damages early in the litigation from the less culpable of the tortfeasors. If the Court does not approve the settlement, Plaintiffs could spend years litigating against the Homebuilders, and they may never get a jury trial. The Homebuilders believe that Plaintiffs' claims are subject to arbitration. Murphy Decl. ¶ 10. Plaintiffs disagree, but they may have to participate in arbitration with the Homebuilders before they can challenge the validity of the arbitration clause. See *Loving & Evans v. Blick* (1949) 33 Cal.2d 603, 609.

The arbitration process would take years because the purchase and sale agreements contain arbitration clauses that prohibit the consolidation of claims. Murphy Decl. ¶ 10. The named plaintiffs

---

[1] The average for all Class Members is approximately $12,000 per home. The average distribution for Tier One homes will be approximately $18,000; $1,000 for Tier Two; $7,500 for Tier Three; and $1,000 for Tier Four. See Reynolds Decl. ¶ 35, Exh. A.

own eighty-five (85) units at the Shipyards. Murphy Decl. ¶ 33. If the Homebuilders refuse to waive the prohibition on consolidation, individual arbitrations will require a significant time commitment from Class Counsel, Homebuilders' counsel, the expert witnesses, and the arbitrators. The arbitrations against the Homebuilders may take longer than the litigation against Tetra Tech.

The arbitration process will also be risky because the rules favor the Homebuilders. The purchase and sale agreements call for arbitration using the American Arbitration Association's Home Construction rules. Murphy Decl. ¶ 10. These rules severely limit Plaintiffs' discovery rights. Plaintiffs are allowed only one deposition without further approval from the arbitrator, and they are entitled to only those documents that the Homebuilders willingly produce. Arbitration will also be costly. According to the rules, Plaintiffs must pay significant fees for the arbitration plus their hourly expert fees. Each homeowner's award would have to be reduced by their *pro rata* share of Class Counsel's costs. *Ibid*. The average Class Member's net recovery at arbitration may not exceed the average recovery under this settlement. These costs, risks, and delay of further litigation compel a finding that an early recovery of 12.2 percent of their economic damages is adequate. *See* Reynolds Decl. ¶ 27. "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015).

### b. The Proposed Method of Distribution is Efficient.

Class Counsel identified all Class Members and allocated the Settlement Fund Balance among the Shipyards units. We identified the Class Members by reviewing official records maintained by the City and County of San Francisco Office of the Assessor-Recorder. Murphy Decl. ¶ 23. We identified 668 persons or entities who owned units on Parcel A as of August 14, 2020. We provided that list of names with addresses to Epiq for implementation of the Notice Plan. Murphy Decl. ¶ 24.

The settlement shares will be distributed without requiring any action by the Class Members. The Class Notice notified them that they will be receiving a settlement check delivered to their Shipyards address or the address identified through the Settlement Administrator's research. Murphy Decl. ¶¶ 31. Epiq will issue one settlement check for each of the 347 units on Parcel A. (They will

issue 27 more checks for the homes have been re-sold.) The payee will be every person and entity listed on the deed for the unit as of August 14, 2020 according to public records. Epiq has agreed to accommodate Class Member requests related to the settlement checks, including changing their mailing address or requesting that the payees receive separate checks. Murphy Decl. ¶ 31.

### c. The Relief is Adequate in Light of the Requested Attorneys' Fees and Costs

Class Counsel has asked the Court to reimburse $323,461 in reasonable costs that would normally be charged to a fee-paying client and to award them $1,494,135 in attorneys' fees. *See Pennington* Plaintiff Class Counsel's Motion for Attorneys' Fees and Costs. Dkt. 175.

Class Counsel ask the Court to first reimburse their costs and expenses from the Settlement Fund. Then Class Counsel will ask the court to award attorneys' fees in the amount of 25% of the Net Settlement Fund (i.e., the settlement fund after costs are deducted). Calculating attorneys' fees as a percentage of the Net Settlement Fund instead of the total Settlement Fund results in a larger Settlement Fund Balance for the Class Members.

Class Counsel will not be paid until after final approval. Murphy Decl. ¶ 18. The mediators at JAMS will allocate fees between the three firms that form Class Counsel should the firms not agree to an allocation. *Ibid*.

### d. The Relief is Adequate in Light of Other Agreements Made in Connection with the Settlement

The Parties finalized a detailed settlement agreement on August 10, 2020. Murphy Decl. ¶ 14, Exh. A. There is no undisclosed side agreement between the Parties regarding attorneys' fees. Murphy Decl. ¶ 18.

The Parties have also entered into a Supplemental Agreement regarding the number of requests for exclusion. Murphy Decl. ¶ 19. The Homebuilders have the option to withdraw from the settlement if the number of Class Members who opt out exceeds a certain threshold. The Parties prefer to keep that threshold confidential, but we are willing to share that number *in camera* if the Court so desires.

Some of the Homebuilders entered into another agreement in connection with this settlement. They settled a separate lawsuit in Superior Court alleging that some of the Homebuilders made

MOTION FOR FINAL APPROVAL OF *PENNINGTON* PLAINTIFFS' CLASS SETTLEMENT WITH HOMEBUILDER DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 3:18-cv-05330-JD

8

misrepresentations about their intent to build certain parks at the Shipyards. (Superior Court of California, San Francisco County docket CGC-19-576625, [hereafter, the "Park Action].") The Park Action plaintiffs sued the Lennar Corporation, some of the Block entities,[2] and the Mark Company, the real estate broker hired by Lennar to sell units at the Shipyards. Although the terms of the Park Action settlement are confidential, but Class Counsel is willing to share that those terms in camera if the Court so desires. Murphy Decl. ¶ 35.

JAMS negotiated the Park Action settlement simultaneously with the instant settlement. The Park Action will be handled exclusively in state court because Lennar never removed the case. There are twenty (20) Park Action plaintiffs, all of whom are Class Members. Murphy Decl. ¶ 35.

### 5. The Proposal Treats Class Members Equitably Relative to Each Other

The proposed Settlement is fair because it allocates the settlement fund balance on a *pro rata* basis. Rule 23(e)(2)(D). Each Class Member will receive a different settlement share, but those differences are appropriate because each Class Member's damages are subject to a different calculation.

The Settlement Fund Balance will be allocated to the Class Members based on objective, publicly available data. Class Members have suffered two categories of damages because of the Homebuilders' conduct: Appreciation impairment damages and damages related to the payment of *Mello-Roos* taxes. The Allocation Plan will distribute the Settlement Fund Balance based on the amount of each type of damages that each Class Member has suffered. *See* Reynolds Decl. ¶¶ 29–36.

### C. This Court Should Grant Final Certification of the Settlement Class

This Court conditionally certified the settlement class of 662 individuals. Dkt. 154. Since then, Class Counsel identified six additional Class Members. Reynolds Decl. ¶ 21. All of those Class Members received notice pursuant to the Notice Plan. Azari Decl. ¶ 10. Class Counsel also identified two individuals who are excluded from the class because they are current or former employees of the Homebuilders. Murphy Decl. ¶ 25. Class Counsel contacted those employees and notified them that neither they nor their co-owners will recover benefits under this Settlement, and Class Counsel provided instructions for filing an objection if they disagreed. Murphy Decl. ¶ 25. The final class

---

[2] HPS1 Block 50, LLC; HPS1 Block 51, LLC; HPS1 Block 53, LLC; and HPS1 Block 54, LLC.

includes 660 Class Members.[3] Murphy Decl. ¶ 30. The class is so numerous that joinder of all members is impracticable. Fed. R. Civ. Proc. 23(a)(1); *See also Stovall-Gusman v. W.W. Grainger, Inc.*, No. 13-CV-02540-JD, 2014 WL 5492729, at *3 (N.D. Cal., Oct. 30, 2014) [330 members of the class sufficient to meet numerosity requirement].

Since the Order granting preliminary approval, nothing else has changed regarding the certification analysis. Common questions about the Homebuilders' uniform misrepresentations and causation still predominate over questions impacting individual Class Members. Fed. R. Civ. Proc. 23(a)(2), (b)(3). The Representative Plaintiff, Mrs. Pennington, still has claims typical of the Class and she continues to adequately represent the Class. Fed. R. Civ. Proc. 23(a)(3), (4); *see also* Pennington Decl. ¶¶ 3–10. Class Counsel has adequately represented the Class. See *Pennington* Plaintiff Class Counsel's Motion for Attorneys' Fees and Costs (Dkt. 175). And a Class Action continues to be the superior method for fairly and efficiently adjudicating the controversy because the Class has a high degree of cohesion, and the lack of objections and opt outs shows that no class member prefers to individually control the prosecution of a separate action. Fed. R. Civ. Proc. Rule 23(b)(3).

### D. This Court Should Grant Final Approval of the allocation Plan Because it is Fair, Reasonable, and Adequate

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement: the distribution plan must be 'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (internal citations omitted). When allocating funds, "[i]t is reasonable to allocate the settlement funds to Class Members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045-46 (N.D. Cal. 2008) (internal citations omitted) (approving securities class action settlement allocation on a "per-share basis").

---

[3] The Class was originally 662 members. Class Counsel identified six additional members, for a total of 668. There are eight names on the deeds for the three units owned by the excluded class members, for a total class of 660 eligible Class Members.

### 1. The Allocation Plan Involves Two Types of Damages: Appreciation Impairment and *Mello-Roos* Damages.

Class Members have suffered two types of damages at issue in this Settlement. Some have suffered appreciation impairment damages, meaning the value of their homes have not appreciated like comparable homes throughout the Bay Area. All Class Members have suffered *Mello-Roos* damages. *See* Reynolds Decl. ¶ 30.

Class Counsel's expert used a two-step process to calculate appreciation impairment damages. Reynolds Decl. ¶¶ 20–21. First, the expert analyzed the actual appreciation of Shipyards homes that have sold since Congresswoman Pelosi's August 1, 2018 announcement. Then he compared those figures to the normative appreciation of those same homes (i.e., how much the homes should have appreciated according to the S&P CoreLogic Case-Shiller Home Price Index). The expert concluded that Shipyards homes that have re-sold since the announcement showed average appreciation impairment of 19.8 percent. To put another way, those same homes would have sold for 19.8 percent more if they were located outside the Shipyards. The Class has suffered a total of $46,210,057 in appreciation impairment damages as of August 14, 2020. Each Class Member entitled to this category of damages will receive 7.61% of their appreciation impairment damages in this Settlement with the Homebuilders. Reynolds Decl. ¶¶ 30, 32.

*Mello-Roos* taxes are special taxes levied on Shipyards homeowners. Reynolds Decl. ¶¶ 24–26. In 2019, each Shipyards homeowner was assessed .71% more in property taxes than the average San Francisco property owner. These supplemental taxes are designed to finance certain capital facilities in the development, but because of the Tetra Tech negligence and fraud, many of those planned community amenities have been cancelled, reduced, delayed, or materially altered. Mrs. Pennington—and the Class—is receiving very little in return for these exorbitant property taxes. To calculate *Mello-Roos* damages, the expert created a formula that quantified each Class Member's total Mello-Roos liabilities incurred since they purchased their home by multiplying the closing price by .71% and the number of years they owned the home as of August 14, 2020. The Class has suffered a total of $5,317,545 in *Mello-Roos* damages as of August 14, 2020. Every Class member will receive 19% of their *Mello-Roos* damages in this Settlement. Reynolds Decl. ¶ 26.

### 2. The Allocation Plan Awards Damages Based on the Extent of Each Class Member's Injuries and the Strength of Their Claims on the Merits

To allocate the funds equitably, Class Counsel's expert organized Class Members into tiers based on the extent of their injuries and the strength of their claims on the merits. Reynolds Decl. ¶¶ 29–35.

Tier One Class Members have the most significant injuries and strongest claims, so they will receive the bulk of the Settlement Fund Balance. Reynolds Decl. ¶¶ 22, 30. Tier One Class Members purchased their market-rate homes prior to Congresswoman Nancy Pelosi's August 1, 2018 call for a federal investigation into the Tetra Tech scandal at the Shipyards. They still owned the home as of August 14, 2020 when the Motion for Preliminary Approval was filed. Four hundred and ten (410) Tier One Class Members will receive both type of damages: Appreciation impairment damages and *Mello-Roos* damages for a total of $4,148,218. Reynolds Decl. ¶ 35, Exhibit A.

Tier Two Class Members purchased their market-rate homes after August 1, 2018. Reynolds Decl. ¶¶ 22, 31. Their claims are less strong because the Tetra Tech scandal was widely reported by the media before they closed on their homes. Furthermore, their injuries are less significant because they benefited from decreased home prices following Congresswoman Pelosi's announcement of the scandal. One hundred and forty-one (141) Tier Two Class Members will only receive *Mello-Roos* damages of $88,931. They will not receive appreciation impairment damages. Reynolds Decl. ¶ 35, Exhibit A.

Tier Three Class Members had sold their market-rate Shipyards homes as of August 14, 2020 when the Motion for Preliminary Approval was filed. Reynolds Decl. ¶¶ 22, 32. The owners of these twenty-seven (27) homes will receive a distribution based on the purchase date, purchase price, sales date, and sales price of their home. Nine of them outperformed the market when they sold their homes, so they suffered no appreciation impairment; they will only receive *Mello-Roos* damages. The owners of the other eighteen (18) homes underperformed the market by as much as 36% when they sold their home. The owners of those eighteen homes will receive appreciation impairment damages and *Mello-Roos* damages. The fifty-one (51) Tier Three Class Members will receive a total of $206,633. Reynolds Decl. ¶ 35, Exhibit A.

Tier Four Class Members own below-market rate ("BMR") homes. Reynolds Decl. ¶¶ 22, 33. BMR units have not suffered appreciation impairment because the prices are artificially depressed despite strong demand. Fifty-nine (59) Tier Four Class Members will receive *Mello-Roos* damages of $37,486. Reynolds Decl. ¶ 35, Exhibit A.

Exhibit B to the Reynolds declaration is a list of every Shipyards address whose owner is a potential Class Member. A Class Member can search for their address, verify the closing date and closing price of their home, and see the amount of their settlement share under this Settlement. If the Court approves the Settlement, the Claims Administrator will send a check in the amount of the settlement share to the persons named on the deed as of August 14, 2020 as identified through public records. Murphy Decl. ¶ 31.

The Allocation Plan deserves this Court's approval because it is fair, reasonable, and adequate. *See* also Weinstein Decl. ¶ 15.

### E. Plaintiffs' Notice Plan Was Successful

In the context of Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances," and that notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Rule 23(c)(2)(B).

A class settlement notice satisfies due process if it contains a summary sufficient to "apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *UAW v. GMC*, 497 F.3d 615, 629 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). A settlement notice need only be a summary, not a complete source of information. See, e.g., *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987); *Mangione v. First USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001). The Ninth Circuit requires a general description of the proposed settlement. *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir.

MOTION FOR FINAL APPROVAL OF *PENNINGTON* PLAINTIFFS' CLASS SETTLEMENT WITH HOMEBUILDER DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 3:18-cv-05330-JD

13

2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993); *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980).

The Notice Plan reached 100% of the Class Members. Azari Decl. ¶ 23. The Notice Plan sufficiently apprised interested parties about the action and affords them the opportunity to object or opt out. Class Members were contacted by Postcard Notice at either their Shipyards address or an updated address identified by the Settlement Administrator. Azari Decl. ¶¶ 18–22. The Postcard Notice summarized the terms of the settlement, explained the Class Members' options, and directed them to a website specifically dedicated to this settlement. Azari Decl. ¶ 15. The website allows Class Members to download the Long Form Notice. Azari Decl. ¶ 25.

The Long Form Notice contained all the information suggested in the Northern District's Procedural Guidance for Class Action Settlements. *See* Murphy Decl. ¶ 24, Exh. B. It also described the nature of the action, the definition of the class certified, the class claims, that a Class Member may enter an appearance through an attorney, that the court will exclude any Class Member that requests it, the time and manner of exclusion, and the binding effect of a class judgment. *Ibid*.

The Settlement website (www.ShipyardSettlement.com) provided access to the Motion for Preliminary Approval, the motion for attorneys' fees and costs, other important documents, and important dates and deadlines. Azari Decl. ¶ 20. Class Counsel will ask the Claims Administrator to upload this Motion for Final Approval and the supporting declarations to the Settlement website.

This Notice Plan was the best practicable program under the circumstances, and the notice itself satisfied the requirements of Rule 23(c)(2)(B).

According to Epiq, no Class Member has objected to the Settlement or elected to opt out as of August 4, 2021. Azari Decl. ¶ 22.

/././
/././
/././
/././
/././
/././

MOTION FOR FINAL APPROVAL OF *PENNINGTON* PLAINTIFFS' CLASS SETTLEMENT WITH HOMEBUILDER DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 3:18-cv-05330-JD

14

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this court to enter an order: (1) granting final approval of the Settlement; (2) granting final certification of the Class for settlement purposes only; and (3) granting final approval of the Allocation Plan;

Dated: August 5, 2021  **COTCHETT, PITRE & McCARTHY, LLP**

By: /s/ *Anne Marie Murphy*
  ANNE MARIE MURPHY
  DONALD J. MAGILLIGAN

*Lead Class Counsel for Purposes of Settlement*

*Attorneys for:*
*Linda Parker Pennington, Greg Pennington, Theodore Ellington, Victoria Trusty, Michael Lin, Brian Tracey, Salustiano Ribeiro, Christine Farrell, Richard De Francesco, David Castano, Sally Shi, Bingying Wang, Paloma Dudum-Maya, Melissa Dudum-Maya, Christophe Crombez, Oleksandr Yegorov; John Wesley Darden, Jr., Thomas Lupton, Elisa-Maria Torres, Fuching Chi, Imin Lee, Shili Lee, Karla Bravo, Jonah Hershowitz, Andrew Kaplan, Jin Yun, Francis John Russo, Ramiro Castro And Irma Frias-Castro, Individually And As Trustees Of The Castro Family Trust, Jinpeng Zhu, Chenlu Zhu, Liang Xu, Weili Cao, Sean La Rrett, Jewel Robinson; Duan Stefanie Yang, Individually And As Trustee Of The Duan Stefanie Yang Revocable Trust, Theresa Duncan, Anirvan Raja Datta; Jengjia Chen; Christopher M. H. Davidson, Brian Truong, Wontaek Na, So Yeon, John D. Choi, And Nicholas Hayman*

**BOWLES & VERNA LLP**

By: */s/ Bradley R. Bowles*
BRADLEY R. BOWLES (SBN 202722)
JONATHAN W. LEE (SBN 285323)

*Attorneys for:*
*Jorge Hidrobo, Lien Chi, Cory Groom, Cicely Tan, Riley Smith, Heather Watkins, Honoria Baxter, Jedidiah Burack, Untray Brown, Eric S. Vanderpool, Joseph Fraga, Shannon R. Hetrick, Matthew Vo, Manda Choi, Anil Vittal, Janjri Desai, Meng Huang, Siyun Wang, Wilfred Yun, Kwok Yee Karina Yip, Brian Yee, Brett Hanlon, Anthony Booth, Casey Woo, Lara Woo, David Yu, Jerrold Polansky, Individually And As Trustee Of The Jerrold S. Polansky Trust, Cara Uribe, Johnatan Uribe, Conor Mulherin, Malia Mulherin, David Springer And Anna Aldrete Springer, Individually And As Trustees Of The Aldrete Springer Family Living Trust, David Shin And Serena Shin (Née Quan), Individually And As Trustees Of The Shin Family Trust, David Tsai A/K/A Yun-Chung Tsai, Desmond Chan, Duy Minh Nguyen, Vendy Kong, Faiz Sadeq And Afsheen Ahmad, Individually And As Trustees Of The S&A Living Trust, Francis Zamora, Christine Omata, Gabriel Gagner, Gregory Coussa , Jaclynn Coussa (Née Balas), Heda Koh, Steve Kim, Howard Yung, Catherine Chu, Jun Ja Ha, Hye Sook Um, Kenneth Kim, Juyoung Kim, Mathieu Stemmelen, Monica Padilla-Stemmelen, Michael Spencer, Sallie Spencer, Rahim Ibrahim, Judy Jen, Naval Shah, Paul Yue And Janet Yue, Individually And As Trustees Of The Yue Family Trust, Ram Fenster And Mary Jane Mcgeoy, Richard Beach, Joan Beach, Taisen Lin, Sheng Tuan Lin, Thomas Kripinski, Mary Ann Kripinski, Timothy Glanville, Xiaolu Li, Salila Agbayani, Edgar Agbayani, Lama Nachman, Ramez Nachman, Alexander Deschamps, Jessie Deschamps, Jason L. Fried, And Gulnur Tumbat*

**GIBBS LAW GROUP LLP**

By: */s/ Andre M. Mura*
ERIC H. GIBBS (SBN 178658))
ANDRE M. MURA (SBN 298541)
AMANDA M. KARL (SBN 301088)

*Attorneys for Jengjia Chen*

**MOTION FOR FINAL APPROVAL OF *PENNINGTON* PLAINTIFFS' CLASS SETTLEMENT WITH HOMEBUILDER DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 3:18-cv-05330-JD**

16

**Civil Local Rule 5-1(i)(3) Attestation**

Pursuant to Civil Local Rule 5-1(i)(3), I, Anne Marie Murphy, the ECF user whose user ID and password are being utilized in the electronic filing of the foregoing Motion for Final Approval of *Pennington* Plaintiffs' Class Settlement with Homebuilder Defendants, hereby attest that I obtained concurrence in the filing of the document from each of the signatories hereto.

Dated: August 5, 2021                          By: */s/ Anne Marie Murphy*
                                                                **ANNE MARIE MURPHY**