1  ALSTON & BIRD LLP
   JEFFREY DINTZER, SBN 139056
2  Jeffrey.Dintzer@alston.com
   MATTHEW WICKERSHAM, SBN 241733
3  Matt.Wickersham@alston.com
4  333 S. Hope St., 16th Floor
   Los Angeles, CA 90071
5  Telephone:    (213) 576-1000
   Facsimile:    (213) 576-1100
6
7  Attorneys for FIVE POINT HOLDINGS, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| BAYVIEW HUNTERS POINT RESIDENTS, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>TETRA TECH EC, INC., et al.,<br><br>        Defendants. | Case No. 3:19-cv-01417-JD<br><br>[All cases related to Case No.: 3:18-cv-05330-JD]<br><br>**DEFENDANT FIVE POINT HOLDINGS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  December 2, 2021<br>Time:  10:00 a.m.<br>Place:  Courtroom 11, 19th Floor<br>Judge:  Hon. James A. Donato |

ALSTON & BIRD

DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on December 2, 2021 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 11, 19th Floor, United States District Courthouse, 450 Golden Gate Avenue, San Francisco, CA, before the Honorable James Donato, and pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f), Defendant Five Point Holdings, LLC will and hereby does move this Court to dismiss and strike certain allegations in Plaintiffs Bayview Hunters Point Residents' Corrected Fifth Amended Complaint.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, and all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any other information and argument before the Court at the hearing.

Dated: October 19, 2021

Respectfully submitted,

JEFFREY D. DINTZER
MATTHEW C. WICKERSHAM
ALSTON & BIRD LLP

By: */s/ Jeffrey D. Dintzer*
    Jeffrey D. Dintzer

Attorneys for Defendant
FIVE POINT HOLDINGS, LLC

ALSTON & BIRD

i

DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

**TABLE OF CONTENTS**

I. STATEMENT OF ISSUES TO BE DECIDED ...................................................................1
II. INTRODUCTION .............................................................................................................1
III. FACTUAL BACKGROUND ............................................................................................2
IV. LEGAL STANDARD .......................................................................................................5
    A. Motion to Dismiss Under Rule 12(b)(6) ...............................................................5
    B. Motion to Strike Under Rule 12(f) ........................................................................5
V. LEGAL ARGUMENT .......................................................................................................5
    A. The Fifth Amended Complaint Exceeds the Scope of What the Court Permitted ...............5
    B. Plaintiffs Have Failed to Plead Their Fraud Claim with Particularity ..................6
    C. Plaintiffs Have Failed to Plead Averments of Fraud with Particularity ...............8
    D. Plaintiffs Fail to State a Claim for Ultrahazardous Activities ..............................9
    E. Plaintiffs Fail to Allege Facts to Support Their Claim for Violation of Proposition 65 ...............10
    F. "Survival Action" is Not a Recognized Cause of Action ...................................12
    G. Negligence Per Se is Not an Independent Cause of Action ...............................12
    H. Injunctive Relief is a Remedy, Not a Cause of Action ......................................13
VI. CONCLUSION ................................................................................................................13

ALSTON & BIRD

ii

DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ahmed v. City of Antioch*,
   No. 16-cv-01693-HSG, 2016 U.S. Dist. LEXIS 86180 (N.D. Cal. July 1, 2016) ...................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................................5, 12

*Benavidez v. City of San Diego*,
   993 F.3d 1134 (9th Cir. 2021) ...............................................................................................6

*Clarke v. Pac. Gas & Elec. Co.*,
   501 F. Supp. 3d 774 (N.D. Cal. 2020) ................................................................................10

*Collette v. Wyeth Pharms., Inc.*,
   No. 16-cv-01034-JD, 2020 U.S. Dist. LEXIS 108930 (N.D. Cal. June 22, 2020) ...............2, 6

*Dent v. Nat. Football League*,
   968 F.3d 1126 (9th Cir. 2020) .............................................................................................13

*E.J. v. United States*,
   No. 13-cv-01923-NC, 2013 U.S. Dist. LEXIS 163185 (N.D. Cal. Nov. 14, 2013) ................13

*Flowers v. Wells Fargo Bank, N.A.*,
   No. C 11-1315-PJH, 2011 U.S. Dist. LEXIS 75429 (N.D. Cal. July 13, 2011) ......................6

*Gamble v. GMAC Mortg. Corp.*,
   No. C-08-005532-RMW, 2009 U.S. Dist. LEXIS 12214 (N.D. Cal. Feb. 18, 2009) .............12

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .........................................................................................5, 11

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .............................................................................................14

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ...............................................................................................10

*Pegasus Trucking, LLC v. Asset Redeployment Grp., Inc.*,
   No. CV 19-10339 PSG, 2021 U.S. Dist. LEXIS 68881 (C.D. Cal. Feb. 16, 2021) ..................7

*Roth v. Marquez*,
    942 F.2d 617 (9th Cir. 1991) ..........................................................................................12

*Saldana v. Bank of Am., Nat'l Ass'n*,
    No. 15-cv-01161-JD, 2015 U.S. Dist. LEXIS 57665 (N.D. Cal. May 1, 2015) ......................14

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................................5

*Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*,
    No. 17-cv-03871-LHK, 2018 U.S. Dist. LEXIS 236279 (N.D. Cal. Mar. 26, 2018) ...............6

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ............................................................................................5

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..........................................................................................8

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ............................................................................................5

**STATE CASES**

*Am. Chemistry Council v. Off. of Env't. Health Hazard Assessment*,
    55 Cal. App. 5th 1113 (2020) ..........................................................................................11

*Ramirez v. Nelson*,
    44 Cal. 4th 908 (2008) ....................................................................................................13

**STATE STATUTES**

Cal. Civ. Proc. § 377.20 ......................................................................................................12

Cal. Evid. Code § 669 ..........................................................................................................13

**RULES**

Federal Rule of Civil Procedure Rule 9(b) ..................................................................2, 6, 7, 8

Federal Rule of Civil Procedure Rule 12(b)(6) ......................................................................5

Federal Rule of Civil Procedure Rule 12(f) ............................................................................5

**REGULATIONS**

27 CCR § 27001 ..................................................................................................................11

DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

ALSTON & BIRD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF ISSUES TO BE DECIDED

1. Should the first through fourth and seventh through eleventh causes of action be dismissed with respect to Five Point and paragraphs 126 through 149 stricken, because they openly defy this Court's order granting Plaintiffs' leave to amend their Fourth Amended Complaint?

2. Should the claim for fraud be dismissed and averments of fraud in paragraphs 132, 133, 135-139, and 141-145 stricken for failure to plead fraud with particularity?

3. Should the claim for strict liability for ultrahazardous activities be dismissed for failure to allege plausible facts that Five Point engaged in an ultrahazardous activity?

4. Should the claim for violations of Proposition 65 ("Prop. 65") be dismissed for failure to identify any exposures to chemicals "known to the state to cause cancer or reproductive toxicity" and because the allegations with respect to Five Point's alleged violations of Prop. 65 are contradicted by the amended Sixty-Day Notice of Violation?

5. Should the purported claims for injunctive relief, negligence per se, and survival action be dismissed because they are not independent claims under California law?

## II. INTRODUCTION

Plaintiffs initiated this action by filing a single "claim" for injunctive relief against Five Point Holdings, LLC ("Five Point") and Lennar Corporation ("Lennar"). Five Point answered the original action. Plaintiffs subsequently amended their complaint four times. Each of the four times Plaintiffs amended their complaint, they continued to only assert a single "claim" for injunctive relief against Five Point and Lennar. On July 16, 2020, Tetra Tech defendants filed a motion to dismiss Plaintiffs' Corrected Fourth Amended Complaint. ECF No. 64. On March 31, 2021, Court dismissed the complaint and granted Plaintiffs leave to amend "to reflect plaintiffs' compliance with the 60-day statutory [notice of intent to sue] requirements." ECF No. 105. The Court warned that Plaintiffs "*may not add any new claims or defendants without express leave of Court*." *Id*. (emphasis added). On April 30, 2021, Plaintiffs filed their Fifth Amended Complaint ("FAC"), which is contemptuous of the Court's March 31 Order. The FAC asserts *nine new causes of action* and *24 new allegations* against Five Point and Lennar, which are based on conclusory allegations and a fundamental misunderstanding of Five Point's interest in the re-

ALSTON & BIRD

- 1 -
DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS AND STRIKE CORRECTED FIFTH AMENDED COMPLAINTLEGAL02/41142736v1

development of the Hunters Point Naval Shipyard ("Shipyard"). Plaintiffs asserted these new claims and allegations without seeking leave to amend, as if this Court's prior Order was meaningless. In so doing, Plaintiffs unilaterally flouted the Court and imposed unnecessary and unjustifiable costs on Five Point while expanding the scope of litigation far beyond what Five Point could have ever anticipated or is justified.

Plaintiffs' brazen defiance of this Court's Order alone is sufficient grounds to dismiss and strike these new claims and allegations. The Court has reached this conclusion in other cases. *See, e.g.*, *Collette v. Wyeth Pharms., Inc.*, No. 16-cv-01034-JD, 2020 U.S. Dist. LEXIS 108930, at *6 (N.D. Cal. June 22, 2020) (dismissing new claims that exceeded the scope of the Court's order). But the FAC is also subject to dismissal on additional grounds. The FAC makes sweeping and conclusory allegations that Five Point engaged in "homes selling fraud" (FAC, ¶¶ 141-45), "helicopter fraud" (*id*. ¶¶ 135-39), fraud in the context of "conflicts of interest" (*id*. ¶ 133), and fraud in the context of its alleged failure to comply with Prop. 65 (*id*. ¶¶ 213). None of these allegations are stated with any level of particularity, as required under Rule 9(b), and they are contradicted by other allegations in the FAC. Plaintiffs also allege a claim for violation of Prop. 65 but fail to identify any exposures to chemicals "known to the state to cause cancer or reproductive toxicity," and the allegations with respect to Five Point's alleged violation of Prop. 65 are contradicted by the Notice of Violation provided to the California Attorney General. Plaintiffs further allege a claim for strict liability for ultrahazardous activities but fail to plausibly allege that Five Point even engaged in the alleged ultrahazardous activity. Finally, Plaintiffs allege claims for injunctive relief, survival action, and negligence per se which are not recognized causes of action under California law.

In ruling on Tetra Tech's motion to dismiss, the Court "stresse[d] that plaintiffs should make every effort to *clarify and focus their claims*." ECF No. 105 (emphasis added). Plaintiffs ignored the Court's directive and actually did just the opposite. Their claims are confusing, contradictory, and fail as a matter of law. Accordingly, the Court should dismiss Plaintiffs' first through fourth and seventh through twelfth causes of action with respect to Five Point, and strike paragraphs 126 through 149.

### III. FACTUAL BACKGROUND

Over 9,000 individual plaintiffs have asserted various causes of action against Five Point, Lennar, and the Tetra Tech defendants in the FAC. As alleged in the FAC, the Navy purchased the Shipyard in

ALSTON & BIRD

- 2 -
DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

1940 and used the Shipyard to study the effects of nuclear weapons from 1946 until 1969. FAC, ¶¶ 35, 37. In 1989, the Shipyard was placed on the National Priorities List and in 1991 was selected for closure under the Base Realignment and Closure Program. *Id.*, ¶ 41. In 1992, federal and state agencies entered into a Federal Facilities Agreement to coordinate environmental investigation and clean-up of the site and divided the Shipyard into six parcels. *Id.*, ¶ 42. In 2004, the Navy issued a Finding of Suitability to Transfer for Parcel A and transferred Parcel A to the City and County of San Francisco Redevelopment Agency for redevelopment. *Id.*, ¶ 51. Lennar owns Parcel A. *Id.*, ¶ 28.

Most of the FAC's allegations with respect to Five Point focus on construction and development activities on Parcel A. *See, e.g.*, FAC, ¶¶ 126-28, 133, 135, 138, 139, 141-45, 148-49. For example, Plaintiffs allege that Five Point "persists in excavation and development" of the "still contaminated Parcel A," which has exposed Plaintiffs to various toxins. *Id.*, ¶ 126-28. Not true. Lennar and its various subsidiaries are the sole "developers" of Parcel A – not Five Point.[1] Five Point obtained its current interest in the Shipyard in 2016.[2] Through this transaction, Five Point obtained an interest only in Candlestick Point and Phase 2 of the Shipyard. Indeed, Plaintiffs cite videos of Lennar allegedly digging and excavating on Parcel A (FAC, ¶¶ 199, 260), but do not cite any videos or photographs demonstrating that Five Point is currently excavating and developing on Parcel A.

Plaintiffs further allege that Lennar and Five Point "had commenced their development efforts and were digging up of [sic] dirt in the Hunters Point Shipyard, in a location directly contiguous to a chain-link fence dividing the Shipyard from a school and residences along Kiska Road" in violation of Prop. 65. FAC, ¶ 198. However, the amended Prop. 65 Sixty-Day Notice of Violation attached as Exhibit 12 to the FAC contradicts this allegation and states that Lennar, not Five Point, was allegedly videotaped excavating along Kiska Road. *See* FAC, Ex. 12.

---

[1] This is reflected in the Disposition and Development Agreement ("DDA") for Hunters Point Shipyard Phase 1, which identifies LENNAR/BVHP, LLC, not Five Point, as the "developer" of the Phase 1 redevelopment (Parcels A and B). *See* Declaration of Jeffrey Dintzer in Support of Developer Defendants' Reply in Support of Motion for Good-Faith Settlement Determination filed in *Linda Parker Pennington, et al. v. Tetra Tech, Inc. et al.*, Case No. 3:18-cv-05330-JD at Ex. A (ECF No. 206-2). This is further reflected in the Vertical DDAs for the construction of homes on Parcel A, which define various Lennar entities, not Five Point, as the "developers" and "vertical developers" of Parcel A. *See id.* regarding Block 52 at pp. 84, 89; Block 56/57 at pp. 154, 159; Block 54 at pp. 225, 230; Block 55 at pp. 293, 298. Five Point was not even a party to any DDAs for Parcel A.

[2] *See id.* at Ex. B (ECF No. 206-3).

DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

ALSTON & BIRD

Plaintiffs continue to allege, in vague and conclusory terms, that Five Point engaged in fraudulent conduct at the Shipyard. For example, Plaintiffs allege that Five Point engaged in "home selling fraud on Parcel A," but do not allege what the alleged home selling fraud entailed.[3] FAC, ¶¶ 141-145. Plaintiffs further allege that Five Point and Lennar engaged in various "conflicts of interest" with scientists, medical doctors, and government employees as part of a "conspiracy," but do not allege the details of the alleged conspiracy or Five Point's role in the alleged conspiracy. *Id*. ¶¶ 129-134. In support of these allegations, Plaintiffs cite emails exchanged with Mark Ripperda and Amy Brownell. *Id*., ¶¶ 129-130. None of these emails even mentions Five Point. *Id*. ¶ 130. In fact, five of the emails were sent before Five Point even existed as a company.[4] Plaintiffs cite a letter from Dr. John Balmes to support their allegation that Five Point and Lennar "committed a fraud in the context of their conflict of interest with scientists and medical doctors . . . led by Dr. John Balmes," but the letter only mentions Lennar. *Id*. ¶ 133. The letter also states that the alleged conflict of interest occurred when Dr. Balmes provided "advice about the issue of asbestos dust generation during Parcel A construction in 2006-2007." Again, Five Point did not exist as a company in 2006 and 2007. *Id*., ¶ 146.

Finally, Plaintiffs allege that all defendants "engaged in remediation of nuclear waste, radioactive materials, an ultra-hazardous activity at HPNS" and therefore seek to hold defendants strictly liable for damages sustained because of the alleged ultrahazardous activity. FAC, ¶ 186. But Five Point never remediated nuclear waste or radioactive materials at the Shipyard. Five Point is a real estate developer (*id*. ¶ 146) – it does not remediate nuclear and radiological waste. Thus, not only are these allegations implausible, they are plainly false.

Based on these highly generalized and contradictory allegations, Plaintiffs hope to recover $1 billion in damages against Five Point and Lennar. *See* FAC, Prayer for Relief, ¶ 3. However, as discussed below, the FAC fails to state a claim against Five Point under any of the varied laws under which Plaintiffs seek relief.

---

[3] To the extent the Court approves Developer Defendants' Motion for Good Faith Settlement Determination in *Linda Parker Pennington, et al. v. Tetra Tech, Inc. et al*. Case No. 3:18-cv-05330-JD (ECF No. 201), any claims related to the alleged sale of homes on Parcel A will be resolved.

[4] Five Point was incorporated on July 21, 2009. *See* FAC, ¶ 146. The emails from January 1, 2007, October 13, 2006, May 14, 2009, May 29, 2009, and June 24, 2009 were therefore sent before Five Point even existed as a company. FAC, ¶ 130.

ALSTON & BIRD

## IV. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This calls for "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss, the Court assumes that the plaintiff's allegations are true and draws all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The Court need not, however, accept as true allegations that contradict matters properly subject to judicial notice of exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor is the Court required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### B. Motion to Strike Under Rule 12(f)

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).

## V. LEGAL ARGUMENT

### A. The Fifth Amended Complaint Exceeds the Scope of What the Court Permitted

Ruling on Tetra Tech's motion to dismiss Plaintiffs' Fourth Amended Corrected Complaint, the Court granted Plaintiffs' request for "leave of Court to amend this complaint to reflect plaintiffs' compliance with the 60-day statutory requirements" under Prop. 65. *See* ECF No. 105 at 9. The Court instructed that the amended complaint "may not add *any new claims* or defendants without *express leave* of Court." *Id*. at 9 (emphasis added). Plaintiffs ignored Judge Donato's Order and asserted *nine new claims* and added *24 new allegations* against Five Point without asking for leave from the Court. This includes the first through fourth and seventh through eleventh causes of action, and paragraphs 126 through 149 of the FAC. These additional claims and allegations are in no way connected to amending

ALSTON & BIRD

- 5 -
DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

the complaint to reflect "compliance with the 60-day statutory requirements" for Prop. 65. This Court has dismissed claims when parties added new claims that exceeded the scope of amendment; and here, the result should be no different. *See, e.g.*, *Collette*, 2020 U.S. Dist. LEXIS 108930, at *5-6 ("These claims are well beyond the scope of what the Court permitted [Plaintiff] to amend in the last go-around. . . . The fair and efficient administration of justice *demands that parties follow judicial orders*. When a party unilaterally flouts them, as [plaintiff] did here, *they impose unnecessary and unjustifiable costs on opposing parties, and the courts*. Plainly put, it gums up the works and makes litigation unduly burdensome.") (emphasis added). This Court should dismiss these new causes of action and strike the additional allegations without leave to amend because they intentionally rebuke Judge Donato's Order and "impose unnecessary and unjustifiable costs" on Five Point and the Court.

### B. Plaintiffs Have Failed to Plead Their Fraud Claim with Particularity

In contravention of Rule 9(b), Plaintiffs have not pled their fourth cause of action for fraud against Five Point with sufficient particularity. "Particularity includes the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *Benavidez v. City of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (internal quotations omitted). In addition, there is a heightened burden under Rule 9(b) for allegations of fraud against a corporation: "[f]or corporate defendants, a plaintiff must allege 'the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Flowers v. Wells Fargo Bank, N.A.*, No. C 11-1315-PJH, 2011 U.S. Dist. LEXIS 75429, *15 (N.D. Cal. July 13, 2011); *see also Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, No. 17-cv-03871-LHK, 2018 U.S. Dist. LEXIS 236279, *10 (N.D. Cal. Mar. 26, 2018) ("Where fraud has allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim, or at a minimum identify them by title and/or job responsibility.").

Here, the FAC does not plead fraud with any particularity with respect to Five Point's alleged conduct. Paragraph 211 alleges that "DEFENDANTS represented that they were professionals and were skilled at performing radiation remediation and that they would remove and clean-up the radioactive materials from HPNS for the exchange of Billions of tax-payer dollars. DEFENDANTS lied." FAC, ¶

ALSTON & BIRD

- 6 -
DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

211. Plaintiffs do not allege *which* Defendants (or employees) represented that they were professionals in remediation (but it certainly could not have been Five Point, a real estate developer), *when* those representations were made, *where* those representations were made, or *how* they were made.

Paragraph 212 alleges that "PLAINTIFFS justifiably relied to their detriment on DEFENDANTS' representations that the community was going to be 'safe.'" Again, *which* Defendants are Plaintiffs referring to? Plaintiffs cannot pass muster under Rule 9(b) by merely lumping all defendants together. *See Pegasus Trucking, LLC v. Asset Redeployment Grp., Inc.*, No. CV 19-10339 PSG (JEMx), 2021 U.S. Dist. LEXIS 68881, at *5 (C.D. Cal. Feb. 16, 2021) ("Where multiple defendants allegedly engaged in fraudulent activity, '*Rule 9(b) does not allow a complaint to merely lump multiple defendants together*.' Rather, a plaintiff must identify each defendant's role in the alleged scheme."), quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (emphasis added). The Court has already admonished Plaintiffs for "lump[ing] defendants" together when it ruled on Tetra Tech's motion to dismiss, and stated that this constituted "impermissible pleading and it does not give each defendant fair notice of the claims against them. *This must be fixed on amendment*." *See* ECF No. 105 at 8-9 (emphasis added). Plaintiffs never "fixed" their "impermissible pleading," but instead compounded the pleading errors, once again flouting the Court's order.

Paragraph 213 alleges that Five Point "actively concealed from PLAINTIFFS that these DEFENDANTS had chosen not to comply with the requirements of Prop. 65, by providing proper warning of the release of chemicals and toxic materials" and that Five Point "actively conceal[ed]" its alleged failure to comply with Prop. 65. Plaintiffs do not identify *which* Five Point employee allegedly engaged in active concealment or *when* and *how* they concealed information.[5] Plaintiffs further fail to allege which "chemicals and toxic materials" Five Point was required to warn against.

In Paragraph 214, Plaintiffs allege that "DEFENDANTS' acts, conduct and behavior" caused Plaintiffs' damages, and Paragraph 215 alleges that "DEFENDANTS' misconduct was deliberate, and undertaken with oppression, fraud or malice . . . ." Plaintiffs fail to answer the fundamental questions of *which* defendants and *which* employees engaged in this conduct, and *when* and *where* it occurred.

---

[5] Indeed, it is unclear how Five Point could possibly "conceal" an alleged failure to provide a Prop. 65 warning. Plaintiffs provide no explanation.

Accordingly, Plaintiffs have failed to allege any facts which would permit a cogent and compelling inference that Five Point engaged in fraudulent conduct. These allegations run contrary to the purpose of Rule 9(b), which seeks to protect defendants like Five Point from the reputational harm that stems from allegations of fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). There is absolutely no evidence to support allegations of fraud against Five Point – nor have Plaintiffs cited any. Accordingly, the Court should dismiss the fourth cause of action without leave to amend for failure to plead fraud with particularity.

### C. Plaintiffs Have Failed to Plead Averments of Fraud with Particularity

In addition to their fraud claim, Plaintiffs have also failed to plead their "averments" of fraud with particularity. "Rule 9(b) applies to 'averments of fraud' in all civil cases in federal district court," even "where fraud is not a necessary element of a claim[.]" *Vess*, 317 F.3d at 1103-05. The newly added paragraphs 132, 133, 135-139, and 141-145 of the FAC, under the header "Plaintiffs Relied on Lennar Five Point's [sic] *Fraud*," contain averments of fraud that are not pled with any level of particularity.

Paragraph 132 alleges that Five Point engaged in a conflict of interest by "paying $197 per hour for consultation and site visited by Amy Brownell" of the San Francisco Department of Public Health. The FAC does not allege *who* (i.e., *which employee*) within Five Point allegedly paid the $197 per hour fee for consultation services or *when* those amounts were paid. These allegations are followed by a block quote regarding alleged activities by Lennar. Plaintiffs cannot plead fraud with particularity against Five Point by citing alleged conduct by Lennar.

Paragraph 133 alleges that Five Point "committed a fraud in the context" of an alleged conflict of interest with scientists and medical doctors. The FAC does not allege *who* (i.e., *which* employee) within Five Point allegedly committed fraud, *when* the fraud was committed, *where* the fraud was committed, or *how* the fraud was committed. The block quote that follows this allegation focuses on Dr. Balmes' alleged conflict of interest with Lennar (not Five Point), and states that the alleged conflict of interest occurred in 2006-2007, again, *before* the FAC alleges that Five Point even existed as a company. *See* FAC, ¶ 146 (alleging that Five Point was created in 2009). The FAC does not cite any facts with respect to Five Point that would support this averment of fraud, much less facts stated with particularity.

Paragraphs 135 through 139 contain vague allegations that Five Point engaged in "helicopter

- 8 -
DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

fraud." As part of these allegations, paragraph 138 states that Five Point had a "scheme to deceive Plaintiffs and Bayview Residents." These paragraphs do not allege *who* within Five Point allegedly engaged in the "helicopter fraud" or *when* it occurred. Likewise, it is entirely unclear *what* the "scheme to deceive Plaintiffs and Bayview Residents" consisted of, *when* it occurred, *how* it occurred, and *who* within Five Point engaged in this alleged "scheme." Once again, the conclusory allegations in these paragraphs largely focus on Lennar's alleged conduct, which is insufficient to state averments of fraud with particularity against Five Point.

Finally, Paragraphs 141 through 145 contain allegations regarding "home selling fraud on Parcel A," even though Five Point never developed nor sold a single home on Parcel A.[6] Plaintiffs do not allege *who* within Five Point allegedly engaged in home selling fraud, *what* the home selling fraud consisted of, or *when* and *how* it occurred. Plaintiffs further allege that Five Point "solicited agreements with Co-Conspirator Brownell" (FAC, ¶ 142), directed "Co-conspirator Brownell" to make "unsupported claim[s] at a Board of Supervisors committee hearing" (*id*., ¶ 144), and concealed from plaintiffs that Five Point "had chosen to not comply with the requirements of Proposition 65" (*id*., ¶ 145). Again, Plaintiffs have not alleged the *who*, *what*, *when*, *where*, or *how* for any of these allegations. It is quite clear from the face of the FAC that Plaintiffs cannot identify any particular example of fraudulent conduct by Five Point. Thus, the Court should strike these allegations for failure to plead averments of fraud with particularity.

### D. Plaintiffs Fail to State a Claim for Ultrahazardous Activities

Plaintiffs' second cause of action for strict liability for ultrahazardous activities alleges that "DEFENDANTS . . . engaged in remediation of nuclear waste, radioactive materials, an ultra-hazardous activity at HPNS." FAC, ¶¶ 187. Other than this single conclusory allegation, which lumps together *all* defendants, Plaintiffs fail allege a single fact, much less a *plausible* fact, that Five Point – *a real estate developer* – remediated nuclear waste and radioactive materials at the Shipyard. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim."); *Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 791 (N.D. Cal. 2020) (strict liability claims are dismissed if they are not plausibly pleaded). Plaintiffs cannot state a claim for strict liability for ultrahazardous activities without plausibly alleging that Five

---

[6] *See* fn. 1 and 2, *supra*.

Point even engaged in the alleged activity. This claim cannot be cured by amendment because the entire gravamen of the FAC is that Tetra Tech, *not Five Point*, improperlyremediated radioactive materials at the Shipyard. FAC, ¶¶ 17, 18, 44, 69, 98, 22. There is simply no factual support in the FAC for Plaintiffs' false and conclusory allegation that Five Point remediated radioactive materials at the Shipyard.

To the contrary, the FAC is replete with allegations that the Navy hired *Tetra Tech* to perform remediation and clean-up services at Shipyard. *See, e.g.*, FAC, ¶¶ 17 ("Defendant Tetra Tech EC, Inc. . . . contracted with the United States Navy and the United States government to perform clean-up and remediation services at the [Shipyard]"), 44 ("In or about 2004, the United States Navy contracted with Tetra Tech to assist in the cleanup of the Navy Shipyard . . ."), 69 ("Tetra Tech employees and the radiological subcontractors it directly supervised were involved in . . . remediating radioactive material in soil improperly, resulting in potentially radioactively-contaminated soil being shipped offsite . . ."), 98 ("Tetra Tech was contracted to engage in remediation to remove the radioactive contamination and bring contaminant levels below release levels"). In fact, Plaintiffs' sixth cause of action for bad faith is entirely premised upon Tetra Tech's "contract with the Navy to remediate the [Shipyard] for the benefit of BAYVIEW HUNTERS POINT RESIDENTS and the San Francisco community." *Id*. ¶ 222. Of course, that allegation makes sense because unlike Five Point, Tetra Tech is an environmental consulting and engineering firm engaged in the remediation of contaminated properties. *Id*. ¶¶ 17, 18.

Other than the single sweeping and conclusory allegation in the FAC that *all* defendants engaged in remediation of nuclear waste and radioactive materials (FAC, ¶ 187), which is completely lacking in any factual support, the FAC focuses on Five Point's conduct as a "developer," *not* as a company engaged in the remediation of radiological contamination. *See, e.g.*, FAC, ¶¶ 146. These conclusory allegations and inconsistencies render the claim for strict liability for ultrahazardous activities implausible by any rational standard and therefore subject to dismissal. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055 ("[t]he complaint is properly dismissed if it fails to plead enough facts to state a claim to relief that is plausible on its face") (internal quotations omitted).

**E.     Plaintiffs Fail to Allege Facts to Support Their Claim for Violation of Proposition 65**

In their third cause of action, Plaintiffs allege that Five Point violated California's Prop. 65 by failing to warn residents about alleged exposures to "radioactive material and other toxins" associated

ALSTON & BIRD

DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

with digging and excavation activities. FAC, ¶ 197, 198. Plaintiffs' Prop. 65 claim fails for two reasons.

### 1. Plaintiffs Do Not Allege Exposures to Any Prop. 65 Chemicals

Prop. 65 only applies to chemicals "known to the state to cause cancer or reproductive toxicity." *See Am. Chemistry Council v. Off. of Env't. Health Hazard Assessment*, 55 Cal. App. 5th 1113, 1140 (2020) ("Proposition 65 . . . applies only to those chemicals that have been identified and listed as chemicals known to the state to cause cancer or reproductive toxicity") (internal quotations omitted). However, Plaintiffs do not allege exposures to any chemicals on the Prop. 65 list. *See* 27 CCR § 27001 (Prop. 65 list). Instead, the FAC references unspecified "radioactive material and other toxins." FAC, ¶¶ 195, 256. But "radioactive material and other toxins" are not chemicals "known to the state to cause cancer or reproductive toxicity." "Toxins" and "radioactive materials" do not appear anywhere on the Prop. 65 list. *See* 27 CCR § 27001.

### 2. The Allegations with Respect to Five Point are Contradicted by the Notice

The allegations in Paragraph 198 of the FAC are contradicted by the amended Notice of Violation, which is attached as Exhibit 12 to the FAC. Paragraph 198 of the FAC states, "On June 17, 2020 PLAINTIFFS learned that DEFENDANTS' LENNAR CORPORATION *and FIVE POINT HOLDINGS, LLC* had commenced their development efforts and were digging up their dirt in the Hunters Point Shipyard, in a location directly contiguous to a chain-link fence dividing the Shipyard from a school and residences along Kiska Road." FAC, ¶ 198 (emphasis added). However, the Notice of Violation expressly contradicts the FAC's allegations that Five Point engaged in this conduct, stating: "On June 17, 2020, the Violators, *specifically*, Lennar Corporation, was videotaped excavating with multiple heavy equipment in the Hunters Point Naval Shipyard without any warning whatsoever . . . ." (emphasis added). Accordingly, the Notice, which forms the basis for the Prop. 65 claim, contradicts the FAC's allegations with respect to Five Point in Paragraph 198 and demonstrates that the claim is false. Courts regularly dismiss claims when they are contradicted by exhibits attached to the complaint. *See, e.g.*, *Gamble v. GMAC Mortg. Corp.*, No. C-08-005532-RMW, 2009 U.S. Dist. LEXIS 12214, *6-8 (N.D. Cal. Feb. 18, 2009) ("Where an exhibit to a pleading is inconsistent with the pleading, the exhibit controls . . . [T]he facts alleged by plaintiffs are inconsistent with the exhibit . . . This claim is therefore dismissed."); *Roth v. Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991) ("when the allegations of the complaint are refuted by an attached

ALSTON & BIRD

- 11 -
DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

document, the Court need not accept the allegations as being true"). At the very least, this clear contradiction renders the Prop. 65 claim implausible and subject to dismissal. *Twombly*, 550 U.S. at 548.

### F. "Survival Action" is Not a Recognized Cause of Action

In their ninth cause of action, Plaintiffs purport to assert a "survival action" against all Defendants. The Court should dismiss this claim without leave to amend because a survival action is not an independent cause of action under California law, it is a procedural vehicle to ensure that "a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Cal. Civ. Proc. § 377.20. Thus, courts dismiss "survival action" claims because they are not proper independent claims under California law. *See, e.g.*, *Ahmed v. City of Antioch*, No. 16-cv-01693-HSG, 2016 U.S. Dist. LEXIS 86180, at *15 (N.D. Cal. July 1, 2016) ("Plaintiffs' 'survival action' claim is not a proper independent claim, and the Court GRANTS the motions to dismiss it."), citing *Estate of Lopez v. Gelhaus*, 149 F. Supp. 3d 1154, 1166-67 (N.D. Cal. 2016).

Even assuming that "survival action" was an independent cause of action (which it is not), the claim cannot survive because Plaintiffs have failed to plead any specific allegations with respect to Five Point. FAC, ¶¶ 243-247. In fact, Plaintiffs claim that Tetra Tech, *not* Five Point, was the "actual and proximate cause" of damages to Plaintiffs. FAC, ¶ 246.

### G. Negligence Per Se is Not an Independent Cause of Action

The Court should dismiss the FAC's eleventh cause of action for negligence per se without leave to amend because it is not an independent cause of action. As the Ninth Circuit has recently held, "the doctrine of negligence per se is not a separate cause of action but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." *Dent v. Nat. Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020), quoting *Johnson v. Honeywell Int'l Inc.*, 179 Cal. App. 4th 549, 555 (2009); *accord E.J. v. United States*, No. 13-cv-01923-NC, 2013 U.S. Dist. LEXIS 163185, at *9 (N.D. Cal. Nov. 14, 2013) (granting motion to dismiss "because negligence per se is not a stand-alone cause of action"). To invoke the negligence per se doctrine, a plaintiff must allege that: (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused injury; (3) the injury resulted from an occurrence that the enactment was designed to prevent; and (4) the plaintiff fits within the class of persons for whose protection the enactment was adopted. *See* Cal. Evid. Code § 669; *Ramirez v. Nelson*, 44 Cal.

4th 908, 918 (2008).

Here, the Court should dismiss Plaintiffs' eleventh cause of action for negligence per se without leave to amend on the ground that it is not a cause of action. *Dent*, 968 F.3d at 1130. Moreover, because the negligence per se cause of action is premised on an alleged violation of Prop. 65, and plaintiffs' Prop. 65 claim fails for the reasons set forth above, the negligence per se claim must fail as well.

In addition, the FAC fails to sufficiently allege the elements of the negligence per se doctrine. Plaintiffs do not allege that their injuries resulted from an occurrence that Prop. 65 was designed to prevent and that they fit within the class of persons for whose protection Prop. 65 was adopted. *See* Cal. Evid. Code § 669; *Ramirez*, 44 Cal.4th at 918. Accordingly, the claim should also be dismissed because it fails to sufficiently allege the elements of the negligence per se doctrine.

### H. Injunctive Relief is a Remedy, Not a Cause of Action

In Plaintiffs' twelfth cause of action for injunctive relief, Plaintiffs allege that Lennar and Five Point knew that Parcel A and A-1 contained radioactive material and that such "toxins" are "transmitted and carried as dust and particulate matter" during Lennar's digging and excavation activities. FAC, ¶¶ 265, 266. Plaintiffs seek injunctive relief to enjoin construction until the Court appoints a team of experts to "ascertain the nature and extent of toxic materials," "determine a safe protocol" to contain "radioactive or any toxic materials," and monitor excavation and construction activities. *Id.*, ¶ 266. As this Court has recognized, Plaintiffs' claim must fail because injunctive relief is not a separate cause of action, but rather a remedy. *See Saldana v. Bank of Am., Nat'l Ass'n*, No. 15-cv-01161-JD, 2015 U.S. Dist. LEXIS 57665, at *5 (N.D. Cal. May 1, 2015) (dismissing claim for injunctive relief because it is not an independent claim and citing cases holding the same); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) (injunctive relief "does not furnish an independent cause of action. Rather, it allows the court to fashion relief upon a showing of a separate violation of [law]."). Thus, the Court should dismiss the injunctive relief claim without leave to amend.

### VI. <u>CONCLUSION</u>

Plaintiffs unilaterally flouted the Court's order by alleging nine new claims and 24 new allegations against Five Point, thereby unnecessarily and unjustifiably expanding the scope of this litigation. These new claims and allegations are riddled with countless flaws that cannot be remedied. Plaintiffs allege

ALSTON & BIRD

- 13 -

DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT

1  claims that do not exist under California law, assert serious allegations of fraud that are not stated with
2  any particularity, and fail to plausibly allege that Five Point engaged in an ultrahazardous activity.
3  Accordingly, Five Point respectfully requests that the Court dismiss and strike the FAC without leave to
4  amend.

5  Dated: October 19, 2021                                Respectfully submitted,

6                                                          JEFFREY D. DINTZER
                                                           MATTHEW C. WICKERSHAM
7                                                          ALSTON & BIRD LLP

8                                                          By: */s/ Jeffrey D. Dintzer*
9                                                                Jeffrey D. Dintzer

10                                                         Attorneys for Defendant
                                                           FIVE POINT HOLDINGS, LLC
11

ALSTON & BIRD

- 14 -
DEFENDANT FIVE POINT HOLDINGS, LLC's MOTION TO DISMISS CERTAIN CAUSES OF ACTION AND STRIKE CORRECTED FIFTH AMENDED COMPLAINT