United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LINDA PARKER PENNINGTON, et al.,

Plaintiffs,

v.

TETRA TECH, INC., et al.,

Defendants.

Case No. 18-cv-05330-JD

**ORDER RE CLASS CERTIFICATION AND EXCLUSION OF EXPERT**

This order resolves plaintiffs' motion for class certification, Dkt. No. 265, and defendants' related motion to exclude the declaration of plaintiffs' expert Brett Reynolds. Dkt. No. 276. The parties' familiarity with the record is assumed, and the motions are denied.

**DISCUSSION**

**I.    MOTION TO EXCLUDE OPINIONS OF BRETT REYNOLDS**

In support of certification, plaintiffs submitted a 9-page declaration of their proposed expert, Brett Reynolds. Dkt. No. 265-17. Reynolds is a licensed appraiser with 18 years of experience in the real estate industry. *Id*. He opined on "the two primary sources of economic damages incurred by Class Members" in this case. *Id*. ¶ 33. These are said to be: (1) "appreciation impairment / diminution in value" of the Parcel A homes owned by the putative class members, and (2) "excess [tax] charges / *Mello-Roos* damages." *Id*. ¶¶ 5-32.

For the appreciation impairment damages, Reynolds stated that he was "provided with a list of 241 market-rate homes that had been sold on Parcel A as of August 2, 2018," and concluded that, "[a]ssuming an average appreciation impairment of 20.4%, those units have suffered a total appreciation impairment of $55,523,536.00." *Id*. ¶ 30. Reynolds also "calculated the amount of past *Mello-Roos* liabilities incurred by each of the 241 market-rate homes sold on Parcel A as of

United States District Court
Northern District of California

1  August 2, 2018." *Id*. ¶ 32.  Assuming certain Communities Facilities District (CFD) rates as

2  specified in his declaration, Reynolds opined that the Parcel A homeowners have incurred

3  $8,393,735.00 in *Mello-Roos* liabilities.  *Id*.

4       Defendants ask to exclude the opinions in Reynolds' declaration under Federal Rule of

5  Evidence 702.  Dkt. No. 276 at 1.  They say that Reynolds "lacks the expertise to give the

6  opinions" in his declaration, and the "methodology underlying his opinions is fundamentally

7  flawed." *Id*.

8       Exclusion is denied.  "A witness who is qualified as an expert by knowledge, skill,

9  experience, training, or education may testify in the form of an opinion or otherwise if the

10  proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific,

11  technical, or other specialized knowledge will help the trier of fact to understand the evidence or

12  to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony

13  is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable

14  application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The Rule

15  702 inquiry is "a flexible one," with no "definitive checklist or test."  *Daubert v. Merrell Dow*

16  *Pharmaceuticals, Inc.*, 509 U.S. 579, 593-95 (1993).  The Court's task is to "ensur[e] that an

17  expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Id*. at

18  597.[1]

19       Defendants say that Reynolds "has no relevant expertise on which to base his opinion on

20  the cutoff date plaintiffs use for the class definition."  Dkt. No. 276 at 5.  This misses the mark.

21  Reynolds did not express a substantive opinion about the cutoff date for plaintiffs' class definition.

22  Reynolds mentions events that took place in 2018, *see, e.g.*, Dkt. No. 265-17 ¶¶ 16-18, but that is

23  not in the context of giving an opinion as to why August 2, 2018, and not, say, another date in

24  2018, might be the proper cut-off date.  Consequently, this objection is overruled.

---

[1] As the Court recently concluded, the amendments to Rule 702 in December 2023 did not
fundamentally change the determination of admissibility, or the application of prior cases
construing the rule.  *See Reflex Media, Inc. v. SuccessfulMatch.com*, No. 20-cv-06393-JD, 2024
WL 4903267, at *1 (N.D. Cal. Nov. 26, 2024).

United States District Court
Northern District of California

For Reynolds' methodology, defendants' main contention is that Reynolds' choice of index was wrong because it "measures different types of homes than those present at the shipyard" and also "measures non-representative neighborhoods." Dkt. No. 276 at 8-11. That is not a basis for exclusion. The details of what Reynolds "did or didn't take into account in running his analysis . . . may be grist for a good cross-examination at trial, but they do not play a material role in deciding whether [Reynolds'] work should be admitted under Rule 702." *In re Capacitors Antitrust Litigation (No. III)*, No. 17-md-02801-JD, 2018 WL 5980139, at *6 (N.D. Cal. Nov. 14, 2018).

Overall, plaintiffs have carried their burden under Rule 702 of establishing that it is more likely than not that Reynolds' opinion "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Defendants have not shown otherwise.

## II.    MOTION FOR CLASS CERTIFICATION

Plaintiffs propose to certify under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure a class defined as: "All individuals or entities who held title to one or more market-rate units on Parcel A at the Shipyard in San Francisco on August 2, 2018." Dkt. No. 265 at 1. They seek certification for their first, second, fifth, sixth, and seventh causes of action, which are: permanent public and private nuisance; negligence; and negligent and intentional misrepresentation. Dkt. No. 157 (TAC).[2]

"Before it can certify a class, [the Court] must be 'satisfied, after a rigorous analysis, that the prerequisites' of both Rule 23(a) and 23(b)(3) have been satisfied." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc) (citations omitted). "Plaintiffs wishing to proceed through a class action must actually *prove* -- not simply plead -- that their proposed class satisfies each requirement of Rule 23, including (if applicable)

---

[2] Plaintiffs are no longer pursuing their third and fourth causes of action for "statutory fraud" under the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq., and the False Advertising Law (FAL), Cal. Bus. & Prof. Code §§ 17500 et seq. *See* Dkt. No. 290 at 4 n.1. The UCL claim was previously dismissed. *See* Dkt. No. 307. The FAL claim is also ordered dismissed.

1   the predominance requirement of Rule 23(b)(3), and must carry their burden of proof before class

2   certification." *Id*. (cleaned up; emphasis in original).  "Plaintiffs bear the burden of proving by a

3   preponderance of the evidence that the proposed classes satisfy all four requirements of Rule 23(a)

4   and at least one of the subsections of Rule 23(b)."  *Schneider v. YouTube, LLC*, 674 F. Supp. 3d

5   704, 716 (N.D. Cal. 2023).  The predominance inquiry under Rule 23(b)(3) asks "whether the

6   common, aggregation-enabling[] issues in the case are more prevalent or important than the non-

7   common, aggregation-defeating, individual issues."  *Id*. at 716 (quoting *Olean*, 31 F.4th at 664).

8       **A.    Elements of Plaintiffs' Claims**

9       The Rule 23(b)(3) predominance inquiry is guided by the "elements of the underlying

10  cause[s] of action."  *In re Google Play Store Antitrust Litigation*, No. 21-md-02981-JD, 2022 WL

11  17252587, at *8 (N.D. Cal. Nov. 28, 2022) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*,

12  563 U.S. 804, 809 (2011)).  For the negligence claim, plaintiffs "allege that Tetra Tech withheld

13  material information about the contamination of the Shipyard" and that "Tetra Tech breached their

14  duty to warn home buyers about the contamination and to properly remediate HPNS."  Dkt.

15  No. 265 at 7.  The elements of the negligence claim are "duty, breach, causation, and damages."

16  *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1250 (2009).

17      For the nuisance claims, plaintiffs allege that "Tetra Tech created a permanent public and

18  private nuisance which has, among other things, resulted in the diminution of value of, and future

19  harm to, their property."  Dkt. No. 265 at 7 (citing Cal. Civ. Code §§ 3479, 3480, 3481).  Plaintiffs

20  acknowledge that, to prevail on their public nuisance claim, they will need to prove "(1) that Tetra

21  Tech created a condition or permitted a condition to exist that was, among other alternatives,

22  harmful to health, (2) that the condition affected a substantial number of people at the same time,

23  (3) that an ordinary person would be reasonably annoyed or disturbed by the condition, (4) that the

24  seriousness of the harm outweighs the social utility of the defendant's conduct, (5) that Plaintiffs

25  did not consent to Tetra Tech's conduct, (6) that Plaintiffs suffered harm that was different from

26  the type of harm suffered by the general public, and (7) that Tetra Tech's conduct was a

27  substantial factor in causing the plaintiff's harm."  *Id*. at 13 (citing CACI No. 2020 and *Birke v.*

28  *Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1548 (2009)).  For the private nuisance claim,

United States District Court
Northern District of California

4

1    plaintiffs need to prove that "(1) Plaintiffs owned or leased the property; (2) Tetra Tech created a

2    condition that was harmful to health or offensive to the senses; (3) Tetra Tech's conduct was

3    negligent, or the condition was the result of an abnormally dangerous activity; (4) Plaintiffs did

4    not consent to Tetra Tech's conduct that created the condition; (5) the condition substantially

5    interfered with Plaintiffs['] use or enjoyment of the property; (6) an ordinary person would be

6    reasonably annoyed or disturbed by the interference Plaintiffs experienced; (7) Tetra Tech's

7    conduct was a substantial factor in causing the interference with Plaintiffs' use or enjoyment of the

8    property; and (8) the seriousness of the interference Plaintiffs experienced outweighs the public

9    benefit of Tetra Tech's conduct." *Id*. at 14 (citing CACI No. 2021).

10        For the misrepresentation claims, plaintiffs allege that "Tetra Tech committed fraud by

11    omission in its failure to properly remediate HPNS.  Plaintiffs also allege that Tetra Tech engaged

12    in negligent and intentional misrepresentations on chain of custody forms and other documents

13    related to testing." *Id*. at 7.  For their intentional misrepresentation claim, plaintiffs will need to

14    prove "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual

15    and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217,

16    230-31 (2013).  The elements for plaintiffs' negligent misrepresentation claim "are the same

17    except that [negligent misrepresentation] does not require knowledge of falsity but instead requires

18    a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true."

19    *Id*. at 231.

20        **B.    Rule 23(b)(3) Certification**

21        Certification of a class under Rule 23(b)(3) is denied.  Plaintiffs did not demonstrate that

22    the proposed class satisfies each requirement of Rule 23 including the predominance requirement

23    of Rule 23(b)(3).  *Olean*, 31 F.4th at 664.  To obtain certification, plaintiffs must establish that the

24    essential elements of their causes of action "are capable of being established through a common

25    body of evidence, applicable to the whole class." *Id*. at 666.  To be sure, plaintiffs need not prove

26    that "[e]ach element" of their claims is "susceptible to classwide proof," and "the important

27    questions apt to drive the resolution of the litigation are given more weight in the predominance

28    analysis over individualized questions which are of considerably less significance to the claims of

1    the class." *Schneider*, 674 F. Supp. 3d at 716 (quotations omitted). "Rule 23(b)(3) permits

2    certification when 'one or more of the central issues in the action are common to the class and can

3    be said to predominate.'" *Id*. at 717 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453

4    (2016)).

5      The problem here is that plaintiffs have not identified any common evidence that might

6    warrant certification. *See* Dkt. No. 265. This shortfall is particularly problematic for causation,

7    which is a necessary element of each of the claims for which they are seeking certification.

8    Plaintiffs rely solely on the Reynolds declaration as the ostensible common proof of causation.

9    For example, with respect to the negligence claim, plaintiffs say that the "expert report of Brett

10   Reynolds proves that causation and damages are susceptible to class-wide proof." *Id*. at 12. For

11   the nuisance claims, plaintiffs say the Reynolds declaration provides common proof that "Tetra

12   Tech's conduct was a substantial factor in causing Class members' harm." *See id*. at 14-15. The

13   Reynolds declaration is also identified as the only common evidence of the damages the class

14   suffered because of defendants' alleged fraud and negligent misrepresentation. *See id*. at 15, 18-

15   19 ("The real property damages of the proposed class are susceptible to class-wide proof. See

16   Reynolds Decl. According to Mr. Reynolds, each home has suffered appreciation impairment

17   caused by the Tetra Tech scandal and the aborted development of the Shipyard.").

18     But the Reynolds' declaration did not even try to supply class-wide proof on these issues.

19   Reynolds did not offer any opinions whatsoever about causation. He said that he was retained "to

20   analyze whether CPM's clients, homeowners at the Shipyards development in San Francisco, have

21   suffered harm to their property values because of the environmental fraud scandal at the

22   Shipyards." Dkt. No. 265-17. But nothing in the declaration spoke to causation issues in a

23   meaningful way. He did not, for example, consider alternate possible causes. Rather, he simply

24   assumed the conclusion. In performing a "paired sales analysis," he divided the sales into two

25   categories, "non-impacted sales and impacted sales." *Id*. ¶¶ 9-10. Without any substantive

26   explanation, Reynolds stated that "[n]on-impacted sales are homes that were not impacted by the

27   environmental fraud at the Shipyards because they were re-sold before the fraud was widely

28   reported by the media." *Id*. ¶ 11. "Impacted sales," on the other hand, are sales where homes

United States District Court
Northern District of California

"were sold by the developer to the original owner, and then re-sold to a second owner after the environmental fraud was reported widely to the public." *Id.* ¶ 15.  In support of the statement in the declaration that "[t]he environmental fraud at the Shipyards was not widely reported by the media until 2018," Reynolds mentioned one post on a San Francisco real estate website in January 2018; that the San Francisco Chronicle reported "by August 2, 2018" that Congresswoman Nancy Pelosi had called for a federal investigation into the Shipyards, after which there was "substantial media coverage" about "the fraud"; that on August 22, 2018, "SF Weekly ran a story titled 'Toxic Relationship: The Fraud at Hunters Point'"; and "[b]y December 2018, Curbed San Francisco, the real estate publication, reported that major banks (Wells Fargo, Citi, Chase) had stopped lending at the Shipyards." *Id.* ¶¶ 11, 16-18.

These scattered and disjointed observations do not justify Reynolds' decision to look only at "impacted" sales that took place after "the August 2, 2018 article about Nancy Pelosi's call for a federal investigation into the Shipyards cleanup" for purposes of his damages analysis.  *Id.* ¶ 29. Nor did Reynolds provide any support for his assumption that any appreciation impairment for Parcel A homes after August 2, 2018, could only be attributable to Tetra Tech's alleged misconduct at Hunters Point.

Plaintiffs themselves underscored the inadequacy of the Reynolds declaration as common evidence that could support certification.  They say that "[a]ccording to Brett Reynolds, a certified appraiser, HPNS homes sold prior to 2018 were outperforming the market," while "[h]omes sold after January 1, 2018 underperformed the market."  Dkt. No. 290 at 5 (emphases omitted). "Common sense," plaintiffs suggest, "says that something happened in 2018 that caused HPNS home prices to suffer."  *Id.*  "According to Mr. Reynolds, the evidence shows that the real estate market did not incorporate the Tetra Tech fraud until the Steven Rolfe and Justin Hubbard criminal cases were unsealed, Nancy Pelosi called for a federal investigation, and other high-publicity events."  *Id.*

The problem for plaintiffs is that "common sense" is not common proof they can rely on to prove their case at trial on a classwide basis.  Even accepting that "something happened in 2018 that caused HPNS home prices to suffer" from that point on, Reynolds did no analysis at all to

eliminate other possible options for what that "something" might have been.  Plaintiffs further weakened their position by suggesting that Reynolds did not choose the August 2, 2018 cutoff date at all, but merely "accept[ed]" it "from class counsel." *Id*. at 5.  In effect, plaintiffs acknowledged that Reynolds simply assumed causation in the damages calculations he provided in his declaration.  Overall, Reynolds' declaration does not provide evidence that he is "capable of answering [the] common question" of causation "on a class-wide basis." *Olean*, 31 F.4th at 665 (citations omitted).

Without "any sort of representative evidence," each class member will need to provide individual testimony about the possible causes of the relative lack of appreciation in the value of their Parcel A home. *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023).  The number of possible reasons for a lack of appreciation is myriad, and will be informed by all sorts of factors such as type of design and quality of construction, the age of the home, the degree of maintenance over time, code status, the number of bedrooms and bathrooms, individual events such as fires and water leaks, the location of the lot, and a host of other concerns familiar to any home buyer or seller.  Such questions would necessarily result in hundreds of "individualized mini-trials," thereby defeating predominance. *Id*. at 470.

So too for the misrepresentation claims.  Plaintiffs wave at "Tetra Tech's affirmative and intentional misrepresentations about its clean-up efforts," Dkt. No. 265 at 15, without any substantive specifics or evidentiary support.  Consequently, the Court cannot say that questions such as "[w]hether these misrepresentations or omissions were material," *id*. at 16, can be tried on a class basis without knowing what those misrepresentations or omissions are, or what common proof plaintiffs intend to offer to resolve that issue on a classwide basis.

Overall, plaintiffs have offered almost no evidence to meet their burden for any of their claims, and their motion is bereft of any class-wide evidence they propose to use to prove the common questions "in one stroke." *Schneider*, 674 F. Supp. 3d at 716 (quoting *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015)).  There were other deficiencies with plaintiffs' class certification motion but the Court need not get into them here.  The same goes for the other

8

1  Rule 23(a) factors, as plaintiffs' failure to meet their burden under Rule 23(b)(3) mandates that

2  their motion must be denied.

3      **C.      Plaintiffs' Alternative Request for Certification of Issues Under Rule 23(c)(4)**

4      Plaintiffs make an abbreviated request for certification of issues under Rule 23(c)(4) if a

5  Rule 23(b)(3) class is denied.  *See* Dkt. No. 265 at 20-22.  Rule 23(c)(4) states that, "[w]hen

6  appropriate, an action may be brought or maintained as a class action with respect to particular

7  issues."  Fed. R. Civ. P. 23(c)(4).

8      While predominance is not required for certifying an issues class under Rule 23(c)(4), the

9  individualized questions of proof already discussed make a Rule 23(c)(4) class inefficient.  An

10  issues class must "have proper representatives and otherwise comply with Rule 23's

11  requirements."  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1192 n.8 (9th Cir. 2001).

12  In addition, plaintiffs did not demonstrate that certifying an issues class would materially advance

13  the disposition of the litigation as a whole.

14      Rule 23(c)(4) certification is not a consolation prize in the event certification under Rule

15  23(b)(3) is denied.  *See Schneider*, 674 F. Supp. 3d at 727.  It was clearly an afterthought here, and

16  plaintiffs "did not explain why an issues class might advance the litigation as a whole, particularly

17  in light of all the individualized questions" and insufficiency of classwide proof "that foreclosed

18  certification of a (b)(3) class."  *Id.*  Certification under Rule 23(c)(4) is denied.

19      As a closing observation, the Court notes that plaintiffs did not file on the ECF docket an

20  unredacted version of their motion for class certification.  *See* Dkt. No. 264.  This did not impede

21  the Court's analysis of plaintiffs' motion in any way but it was a failure to comply with the

22  District's local rules.  *See* Civil L.R. 79-5(e)(2).  In any event, no party has requested the

23  continued sealing of the materials the plaintiffs provisionally filed under seal, and so the sealing

24  request in Dkt. No. 264 is denied.  Plaintiffs are directed to file an unredacted version of their

25  motion for class certification on the ECF docket by January 6, 2025.

26      The parties indicated that, following a decision on certification, they would "meet and

27  confer regarding the case and . . . submit a stipulation and proposed order that will tailor the

28  remaining pre-trial and trial issues to either a class action or mass action, as the case may be."

United States District Court
Northern District of California

9

Dkt. No. 313.  The parties are directed to meet and confer, and to jointly file by January 24, 2025, a proposed case schedule with dates for pre-trial filings, the final pretrial conference, and trial.

     **IT IS SO ORDERED.**

Dated:  December 23, 2024

_____
JAMES DONATO
United States District Judge